**INDIANA WASTE SYSTEMS, INC., Plaintiff,**

v.

**COUNTY OF PORTER, Brian Gesse, William Carmichael, Larry Sheets, in their capacity as members of Bd. of Com'rs of Porter County; Porter County Bd. of Health, and Gary A. Babcoke, in his capacity as Porter County Health Officer, Defendants.**

**Civ. No. H 89–338.**

United States District Court,
N.D. Indiana,
Hammond Division.

March 12, 1992.

Robert F. Parker, Beckman, Kelly & Smith, Hammond, Ind., for plaintiff.

Robert A. Welsh, Chesterton, Ind., David L. Hollenbeck, Valparaiso, Ind., for defendants.

ORDER

LOZANO, District Judge.

This matter is before the Court on Indiana Waste Systems, Inc.'s ("IWS") Motion for Leave to File Second Amended Complaint filed on March 20, 1990, and Motion for Summary Judgment filed on May 16, 1990. Before the Court is also the County of Porter, Brian Gesse, William Carmichael, Larry Sheets, Porter County Board of Health and Gary A. Babcoke's ("Defendants") Motion for Summary Judgment filed on July 6, 1990. For the reasons set forth herein, IWS' Motion for Leave to File Second Amended Complaint is DENIED, Defendants' Motion for Summary Judgment is GRANTED IN PART, and IWS' Motion for Summary Judgment is hereby DENIED.

BACKGROUND

IWS operates the Wheeler Landfill, a landfill located in Porter County, Indiana (the "Landfill"). The Landfill operates under permit issued by the Indiana Department of Environmental Management ("IDEM"). Ind.Admin.Code tit. 329, art. 2, *et seq.* (1991). The Landfill disposes of approximately 875,000 yards of waste per year, which results in revenue ranging from $4.8 to $5.25 million. The Porter County Board of Health (the "Board") enacted an ordinance, effective September 1, 1989 (the "Ordinance"), which regulates all sanitary landfills in Porter County (the "County") that require a permit from IDEM.[1] Porter County, Ind., Ordinance 89–16 (July 17, 1989) [hereinafter "Ordinance"].

In sum, the Ordinance sets up a permitting system in which landfill owners must apply for a permit in order to operate a landfill within the County's borders.[2] Within 45 days of receipt of an application for a permit, the health officer of the County is to decide "whether or not to issue the applicant a local permit for operation of a sanitary landfill ..." (Ordinance, at Section III). If a permit is denied, the applicant can appeal to the Board. The Ordinance also provides that a permit may be revoked or suspended if the facility operates in violation of any of the technical criteria contained in Section II of the Ordinance.[3]

---

1. The Wheeler Landfill, which is open to the public, is not the only landfill in Porter County. The steel industry has operated solid waste disposal sites on their property, and the Brown Landfill, which also operates with an IDEM permit, accepts only fly ash from Northern Indiana Public Service Company operations. Pretrial Order at 6.

2. A complete copy of the Ordinance is attached to this Order.

3. Operating a landfill without a permit can result in a fine of $500 per day of operation.

Section V of the Ordinance provides for an assessment of an annual fee against a landfill of $.20 per cubic yard of waste disposed in the landfill. Collected fees are placed in a cumulative, nonreverting fund administered and managed by the County Treasurer. Based on the amount of waste that IWS collects, it estimates that it will be paying the County approximately $175,-000 to $200,000 per year. The cost[4] of implementing the landfill oversight program is estimated at $25,000 to $30,000 per year. Under the Ordinance, any sums taken over and above the costs of administering the program will be used to promote, encourage, and implement public and private recycling programs.

IWS advances three bases for why the Ordinance is unconstitutional. First, IWS contends that Section III of the Ordinance, which sets up the permitting process, violates their Fourteenth Amendment right to due process. IWS believes the section is unconstitutionally vague because it provides no guidance to government officials who are in the position of granting or denying permits and contains no standards by which an applicant could seek judicial review of permit actions. Second, IWS argues that Section V, which assesses a fee of $.20 per cubic yard of waste deposited, is an unconstitutional land use regulation which constitutes a regulatory taking of IWS' property without compensation within the Fifth Amendment as incorporated through the Fourteenth Amendment. Third, IWS believes that Section V violates the Equal Protection Clause of the Fourteenth Amendment because the fee imposed is not rationally related to any legitimate exercise of the County's police power. IWS asserts that these three constitutional violations establish that the Defendants, in enacting the Ordinance, denied IWS the privileges and immunities of the Constitution in violation of 42 U.S.C.

§ 1983 and requests this Court to declare the Ordinance unconstitutional and to enjoin the County from enforcing its provisions. Lastly, IWS asks this Court for attorneys fees pursuant to 42 U.S.C. § 1988.

In Defendants' Brief in Opposition to Plaintiff's Pending Motion for Sumary [sic] Judgment and in Support of Defendant's Pending Motion for Summary Judgment, Defendants contend that the Ordinance is constitutional because it is explicit as to the requirements that a landfill owner must meet in order to qualify for a permit, namely complying with Ind.Admin.Code tit. 329, art. 2, et seq. (1991). Defendants also argue that the procedure is not vague because to apply for a local permit all a landfill owner has to do is file a duplicate of the IDEM application. In addition, Defendants argue that the fee provided for in Section V is a legitimate exercise of their police power and that the fee will become a cost of doing business which is passed on through its customers.[5] Further, Defendants contend that the fee would not result in a significant reduction in value of IWS' property and thus no taking within the Fifth Amendment. Lastly, Defendants believe that the Ordinance is rationally related to the County's legitimate interests, among others, of promoting and implementing recycling programs and defraying the costs of enforcing the Ordinance.

DISCUSSION

A. *IWS' Second Motion To Amend Complaint*

■ The grant or denial of a motion to amend a complaint is committed to the sound discretion of the trial court. *E.g., Jones v. Hamelman*, 869 F.2d 1023, 1026 (7th Cir.1989). Moreover, Rule 15(a) mandates that leave to amend a complaint "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Court notes that Defendants are not

---

4. Such costs are those associated with the monitoring and regulating responsibilities required by the Ordinance.

5. By IWS' estimates, the fee will represent only three (3) to four (4) percent of the Landfill's gross revenue.

objecting to the IWS' Motion for Leave to File Second Amended Complaint and, in fact, Defendants have answered Plaintiff's second amended complaint. However, this Court finds that IWS' amendments are specious, as neither the first nor the second amended complaint would cure blatant jurisdictional defects. Therefore, IWS' motion to amend is DENIED.

### B. Cross–Motions For Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988); *Beard v. Whitley County R.E.M.C.*, 840 F.2d 405, 409 (7th Cir.1988); *Roman v. United States Postal Serv.*, 821 F.2d 382, 385 (7th Cir.1987); *McGraw–Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1167 (7th Cir.1986); *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir.1986). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts which might effect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter*, 840 F.2d at 434 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–252, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 211 (1986)).

The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–162, 90 S.Ct. 1598, 1609–1610, 26 L.Ed.2d 142 (1970); *Backes v. Valspar Corp.*, 783 F.2d 77, 79 (7th Cir.1986). To preclude summary judgment, a non-moving party must show a material issue of fact. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but

must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard*, 840 F.2d at 410. Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, "there can be no 'genuine issue as to any material fact', since a complete failure of proof concerning an essential element of a non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

Defendants claim that there are two material facts in dispute which would preclude summary judgment. The first is IWS' statement that "one of the clear purposes of this scheme was to reduce the amount of waste being deposited at the Wheeler Landfill and thereby prolong its life". (Defendants' Statement of Undisputed Material Facts and "Genuine Issues" Pursuant to General Rule 11, at 2.) Defendants claim this is an inaccurate statement. The second is IWS' assertion that the committee formed by the Board to study the solid waste disposal situation in the County ("the Committee") "neither solicited nor received disposal statistics from any other landfill or solid waste disposal facility in Porter County." *Id.* Defendants reply to this assertion by stating that the chairman of the Committee, Mr. Les Chapman, was head of disposal for Bethlehem Steel Corporation and brought to the Committee his knowledge and insight concerning private industrial waste disposal facilities in Porter County which knowledge was shared with the Committee on a regular basis. *Id.* As to Defendants' first contention, this Court finds that this to not be a material fact because the Court may uphold the Ordinance based on other purposes for its enactment advanced by the parties.[6] And as

---

6. The Court also notes, as pointed out in Plaintiff's Reply Brief in Support of Motion of Plaintiff Indiana Waste Systems, Inc. for Summary Judgment, that a deposition of William Carmichael, a member of the Board of County Commissioners that enacted the Ordinance, reveals that the County was concerned about extending the life of the Wheeler Landfill:

to Defendants' second disputed fact, this Court finds this fact also not to be material and, that in any event, Defendants' statement that Mr. Chapman informed the Committee about waste disposal practices in Porter County does not refute the fact asserted by IWS that the Committee did not solicit or receive statistics from any other solid waste disposal facility in the County. As there are no disputes of material fact, this action is ripe for summary judgment as a matter of law.

IWS brings this action pursuant to 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Section 1983 does not provide a substantive right; it merely provides a cause of action for the deprivation of any rights, privilege, or immunities secured by the Constitution and laws of the United States by one acting "under the color of state law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922–25, 102 S.Ct. 2744, 2746–47, 73 L.Ed.2d 482 (1982). The elements of a section 1983 claim are: 1) the plaintiff held a constitutionally protected right; 2) he is deprived of that right in violation of the Constitution; 3) the defendant intentionally caused the deprivation; and 4) the defendant acted under color of state law. *Schertz v. Waupaca County*, 875 F.2d 578, 581 (7th Cir.1989)

Q. If I understand your answer one part of your answer was that an item of concern over a number of years was how to reduce the waste stream to your only existing landfill and that is the Wheeler Landfill?
A. Yes.
Q. So to extend its life?
A. Correct.

(citing *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988)); *New Burnham Prairie Homes, Inc. v. Burnham*, 910 F.2d 1474, 1479 (7th Cir.1990). To determine whether IWS can state a claim for which relief can be granted under section 1983, this Court must evaluate IWS' claims in light of the above elements.

But before the Court addresses IWS' constitutional claims, the Court finds it appropriate to inform the parties about the Tax Injunction Act, enacted in 1948, which provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and effective remedy may be had in the courts of such State.

28 U.S.C. § 1341 (1976). *See Hamer v. Lake County*, 819 F.2d 1362, 1363 (7th Cir.1987). The Act applies to declaratory relief as well as injunctive relief. *California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507, 73 L.Ed.2d 93 (1982); *Alcan Aluminum Ltd. v. Franchise Tax Bd. of Cal.*, 860 F.2d 688, 698, (7th Cir.1988), *rev'd on other grounds*, 493 U.S. 331, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990).

Principles of comity prevent a federal court from entertaining any § 1983 action to redress alleged unconstitutional state taxation. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981). Instead, federal courts should rely upon the "overriding interests of the state in an efficient, expeditious and nondisruptive resolution of … tax disputes" when an adequate state remedy is available. *Dennis v. Higgins*, —— U.S. ——, 111 S.Ct. 865, 880, 112 L.Ed.2d 969 (1991) (Kennedy, J., dissenting).

Q. And it was that purpose as well as others in mind that you gave this charge to the Board of Health and they went about forming their committee and investigating the subject matter?
A. That is correct.
Carmichael Deposition at 6.

The statute "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). This last consideration was the principal motivating force behind the Act: this legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes. *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.,* 493 U.S. 331, 110 S.Ct. 661, 666, 107 L.Ed.2d 696 (1990) (quoting *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 1233, 67 L.Ed.2d 464 (1981)).

Literally, the statute means that if the $.20 per cubic yard fine is a tax, and there is an adequate state remedy, this Court is wholly without jurisdiction to consider two of IWS' claims, namely the taking and equal protection claims as they relate to Section V of the Ordinance. *See Fromm v. Rosewell,* 771 F.2d 1089, 1091–92 (7th Cir. 1985), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986). Of course, a court may *sua sponte* raise jurisdictional defects. However, in the normal adversarial process, the parties are expected to raise jurisdictional defects. Happily, this is not the norm.

■ A special assessment by a municipality constitutes a "tax" within the meaning of § 1341, *Lake Lansing Special Assessment Protest Ass'n v. Ingham County Bd. of Comm'rs,* 488 F.Supp. 767, 772 (W.D.Mich.1980), *Group Assisting Sewer Proposal–Ansonia v. Ansonia,* 448 F.Supp. 45, 46 (D.Conn.1978), as well as a property tax, *Marvin F. Poer & Co. v. Counties of Alameda,* 725 F.2d 1234, 1236 (9th Cir.1984), *Fried v. Carey,* 620 F.2d 591, 592 (7th Cir.1978), gross receipts tax, *Air Polynesia, Inc. v. Frietas,* 742 F.2d 546, 547 (9th Cir.1984), *Mobile Oil Corp. v. Tully,* 639 F.2d 912, 913 (2d Cir.) *cert. denied sub nom. Tully v. New England Petroleum Corp.,* 452 U.S. 967, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981), city license tax, *A Bonding Co. v. Sunnuck,* 629 F.2d 1127, 1128 (5th Cir.1980), and state permit fees, *American Trucking Ass'ns, Inc. v. Conway,* 514 F.Supp. 1341, 1343 (D.Va. 1983).

As noted above, a review of pertinent case law reveals that the term "tax" is interpreted broadly by district courts. Looking at the "fee" assessed by the Board, the Court finds that this "fee" is essentially a tax. This conclusion stems in part from the permanent nature of the fee, in that it is assessed on an annual basis, and is to be used to further the proper administration of landfills and for County recycling purposes. Moreover, in IWS' First Amended Complaint filed on February 16, 1990, IWS agrees that the fee is a tax by stating that "[n]o statute grants Porter County the express authority to impose a tax such as the one contemplated by Section V of the Ordinance." First Amended Complaint, at 6. As such, the Court holds that the "fee" is a tax within 28 U.S.C. § 1341.

■ A state declaratory judgment action constitutes a plain, speedy, and efficient remedy. *Tully v. Griffin, Inc.,* 429 U.S. 68, 74–75, 97 S.Ct. 219, 223, 50 L.Ed.2d 227 (1976); *Ammex Warehouse Co. v. Gallman,* 414 U.S. 802, 94 S.Ct. 163, 38 L.Ed.2d 39 (1973); *Long Island Lighting Co. v. Brookhaven,* 703 F.Supp. 241, 244 (E.D.N.Y.1989), *aff'd,* 889 F.2d 428 (2d Cir. 1989). A state remedy that is "uncertain or speculative is not adequate to bar federal jurisdiction." *Franchise Tax Bd.,* 110 S.Ct. at 667.

In Indiana, the Uniform Declaratory Judgments Act is in effect as follows:

34–4–10–1 Power of court; form and effect of declaration

Sec. 1. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declaration

shall have the force and effect of a final judgment or decree.

34–4–10–2 Persons who may obtain declaratory judgment

Sec. 2. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Under Indiana law, petitioning a court for a declaratory judgment is the proper approach to determine the constitutionality of an ordinance. *Waldron v. McAtee*, 723 F.2d 1348, 1352, 1355 (7th Cir.1983); *Neswick v. Board of Comm'rs of Newton County*, 426 N.E.2d 50, 53 (Ind.1981). Further, parties may file a declaratory judgment action to challenge the validity of state or local tax laws. *South Bend v. Brooksfield Farm*, 418 N.E.2d 305, 306 (Ind.App.1981); *Department of Treasury of Indiana v. J.P. Michael Co.*, 11 N.E.2d 512, 105 Ind.App. 255 (1937). In fact, IWS has in the past sought a declaratory judgment against the Board of Commissioners of Howard County to have a landfill ordinance declared unconstitutional. In that suit, the Indiana Court of Appeals found in favor of IWS and declared the statute invalid. *Indiana Waste Systems, Inc. v. Board of Comm'rs of Howard County*, 389 N.E.2d 52 (Ind.App.1979). Consequently, IWS has an adequate state remedy in Indiana and this Court lacks jurisdiction to hear its claims that the Ordinance's "fee" under Section V violates the Equal Protection as well as the Takings Clause of the Constitution.

However, this Court does have jurisdiction to determine whether the Ordinance is unduly vague. The Ordinance can basically be divided into two parts. The first part is a regulatory scheme to set up a permitting process. The second part is a taxing scheme to generate revenue to fund the oversight of permit holder's landfills and to promote private and public recycling projects. In this respect, IWS' challenges to the Ordinance are severable. Count 1 of IWS' First Amended Complaint alleges that the Ordinance is unconstitutionally vague. Counts 2 and 3 allege that the Ordinance's fee violates the Equal Protection and the Takings Clause. Although the Ordinance does have taxing provisions, its sole purpose is not to tax. As a result, this Court does not have jurisdiction to consider IWS' tax related claims, but because the provisions of the Ordinance are severable, will consider IWS' vagueness claim.[7]

In *Grayned v. City of Rockford*, the United States Supreme Court set forth the standards for evaluating vagueness:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). An ordinance is subject to attack on vagueness grounds despite the fact that it is an ordinance and not a statute. *Flipside, Hoffman Estates, Inc. v. Hoffman Estates*, 639 F.2d 373, 377 (7th Cir.1981), *rev'd on other grounds*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). An ordinance is subject to the vagueness doctrine although it imposes no

7. The Ordinance provides in Section VIII that "[s]hould any section or provisions of this Ordinance be declared unconstitutional, or invalid for any reason, the remainder of this Ordinance shall not be affected thereby."

criminal sanctions because the essence of the defect is not the penalty but "the exaction of obedience to a rule or standard ... so vague and indefinite as really to be no rule or standard at all." *Id.* at 378 (quoting *A.B. Small Co. v. American Sugar Refining Co.*, 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925)). In determining whether a civil or criminal law is vague, a court will follow the same rules of construction whether it is a statute or an ordinance. *Id.* When a law is facially challenged on vagueness grounds, a court should uphold the challenge only if the law is impermissibly vague in all of its applications. *Flipside*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *Server v. Mizell*, 902 F.2d 611, 613 (7th Cir.1991); *Brockert v. Skornicka*, 711 F.2d 1376, 1381 (7th Cir.1983). Economic regulation is subject to a less strict vagueness test because businesses, which can plan behavior carefully, can consult relevant legislation in advance of any action. *Flipside*, 455 U.S. at 498, 102 S.Ct. at 1193; *Brockert*, 711 F.2d at 1381. Further, a regulated enterprise may have the ability to clarify the meaning of an ordinance by its own inquiry, or by resort to an administrative process. *Flipside*, 455 U.S. at 498, 102 S.Ct. at 1193.

The County's interpretation and administration of the Ordinance is also highly relevant, for "[i]n evaluating a facial challenge to a state law, a federal court must ... consider any limiting construction that a state court or enforcement agency has proffered." *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 2756, 105 L.Ed.2d 661 (1989) (quoting *Flipside, supra*); *Kolender v. Lawson*, 461 U.S. 352, 355, 103 S.Ct. 1855, 1857, 75 L.Ed.2d 903 (1983); *Stokes v. Madison*, 930 F.2d 1163, 1169–70 (7th Cir.1991). "Any inadequacy on the face of [a] guideline [may be] remedied by the city's narrowing construction." *Ward*, 109 S.Ct. at 2756.

IWS claims that the Ordinance is vague because the County Health Officer, who decides whether to issue a permit, has no guidelines to aid him in his decision to grant or deny a local operating permit, other than the opportunity for public review and comment. Section II of the Ordinance provides in part:

> Except as specifically delineated in this Ordinance, any sanitary landfill or solid waste land disposal facility located in Porter County shall be operated in compliance with the technical criteria and regulatory scheme contained in the State of Indiana Solid Waste Management Regulations as set forth in 329 IAC 2.

The Ordinance then creates twelve (12) additional requirements for operating a landfill or obtaining a permit in the County. Ind.Code Ann. § 329 Ind.Admin.Code tit. 329, art. 2, *et seq.* (1991) sets forth the procedures for securing a permit to operate a landfill. The Ordinance in Section II, No. 11, states that "[a]ny and all references contained in 329 IAC 2 to the Commissioner 'shall be modified to read the Porter County Health Officer.'" Consequently, Article 2–8–1 *et seq.* is incorporated into the Ordinance by the language that a landfill must be operated in compliance with 329 I.A.C. 2, and gives applicants notice of required application procedures, which include complying with the twelve additional requirements. The County advances this construction and states that the "landfill owner or operator who meets these requirements qualifies for a local operating permit." Defendants' Brief in Opposition to Plaintiff's Pending Motion for Sumary [sic] Judgment and in Support of Defendant's Pending Motion for Summary Judgment at 3. This Court is entitled to rely on the County's construction of the Ordinance to clarify any unclear portions of the Ordinance. However, this Court finds that the Ordinance is not vague in the first instance.

The Ordinance provides that to apply for a permit, one need only submit a duplicate of an IDEM application. Further, Section III of the Ordinance sets forth conditions for revocation or suspension of a permit:

> Operation of a sanitary landfill and/or solid waste land disposal facility in violation of any of the technical criteria contained in Section II of this Ordinance shall be grounds for suspension or revo-

cation of a local operating permit. The Porter County Board of Health shall establish reasonable rules and regulations for implementing a procedure for suspension or revocation of local operating permits under this Ordinance.

The Section II technical criteria stated above in Section III refer to the requirement that a landfill must be operated in compliance with regulations as set forth in 329 IAC 2. Thus, the Ordinance is consistent in that both the revocation and the permit application process are to be administered in accordance with Article 2.

The Court also finds that IWS had notice that the Ordinance, which sets up a permitting process, was to be based on Article 2. In IWS' Statement of Undisputed Material Facts Pursuant to General Rule 11, IWS admits that Professor Robert F. Blomquist of the Valparaiso University School of Law, who was a member of the Committee to study the waste disposal situation:

> proposed that the new landfill ordinance be patterned after [329 I.A.C. 2]. Thereafter, the committee proceeded to discuss specifics of a new ordinance using the to-be-enacted state solid waste regulations as a starting point. The committee decided to recommend adoption of an ordinance with certain specific changes in the state regulations.

Statement of Undisputed Material Facts at 2–3. Further, IWS admits that it is aware of the enactment of Article 2, which comprehensively rewrote the regulations governing solid waste disposal activities. Therefor, it appears to the Court that IWS cannot in good faith make the argument that "the lack of standards prevents IWS from conforming its conduct so as to enhance its chances of obtaining a permit" because it had notice of how to conform its conduct to enhance its chances of getting a permit. Brief in Support of Motion of Plaintiff Indiana Waste Systems, Inc. for Summary Judgment at 7.

### C. Attorney's Fees

Under 42 U.S.C. § 1988, prevailing plaintiff's are entitled to attorney's fees "if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit". *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Hamer v. Lake County*, 819 F.2d 1362, 1366 (7th Cir.1987). As IWS did not prevail on any of its claims, it is not entitled to attorney's fees.

### CONCLUSION

The Court hereby DENIES IWS' Motion for Leave to File Second Amended Complaint and Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment with regard to IWS' claim that the Ordinance is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

### APPENDIX TO OPINION OF THE COURT

### ORDINANCE NO. 89–16

### AN ORDINANCE REGULATING SANITARY LANDFILLS AND SOLID WASTE LAND DISPOSAL FACILITIES IN THE COUNTY OF PORTER, STATE OF INDIANA

Be it ordained and enacted by the Board of Commissioners of the County of Porter, State of Indiana, as follows:

SECTION I:

The owner and/or operator of any sanitary landfill or solid waste land disposal facility located in the County of Porter, State of Indiana, shall operate such facility in compliance with the terms and conditions contained in this Ordinance.

The Porter County Board of Health by and through its Health Officer and staff shall administer the terms and conditions of this Ordinance.

SECTION II:

Except as specifically delineated in this Ordinance, any sanitary landfill or solid waste land disposal facility located in Porter County shall be operated in compliance with the technical criteria and regulatory scheme contained in the State of Indiana

Solid Waste Management Regulations as set forth in 329 IAC 2.

The following exceptions to 329 IAC 2 shall apply to the operation of sanitary landfills and solid waste land disposal facilities in Porter County:

1. 329 IAC 2–1–3(b) shall be modified to read as follows:

 All records of monitoring activities and results shall be retained by the permitee [sic] for fifteen (15) years. The fifteen (15) year period shall be extended automatically during the course of any unresolved litigation between the County of Porter and a permittee; or as required by the permit conditions. The fifteen (15) year period may also be extended by order of the Porter County Health Officer.

2. 329 IAC 2–4–2 shall be modified to read as follows:

 No person shall cause or allow the storage, containment, processing, or disposal of solid waste in a manner which creates a threat to human health or the environment, including the creating of a fire hazard, vector attraction, air or ground and surface water pollution or contamination.

3. 329 IAC 2–4–4(a) shall be modified to read as follows:

 The owner of real estate upon which an open dump is located shall be responsible for immediately implementing procedures for correcting and controlling any nuisance condition which may occur as the result of the open dump and shall complete that correction and controlling action pursuant to a schedule submitted to and approved by the Porter County Health Officer.

4. 329 IAC 2–4–5 shall be modified to read as follows:

 The owner of real estate upon which is located an open dump shall be responsible for immediately eliminating any threat to human health or the environment.

5. 329 IAC 2–5–1(b) shall be modified to read as follows:

 In order to continue such activity beyond September 1, 1989, these industries shall submit information to the Porter County Health Department in compliance with Section 2 of this Rule (329 IAC 2–5–2). Compliance with Section 2 shall constitute an interim permit and shall allow the facility to continue operating until such time as the Porter County Health Officer issues or denies a solid waste facility permit under Section 3 of this Rule (329 IAC 2–5–3) provided that such industries have submitted the information required no later than thirty (30) days prior to September 1, 1989.

6. 329 IAC 2–6–2(b) shall be modified to read as follows:

 All owners or operators (present or past) of a closed facility or the owner of real estate upon which a closed facility is located or any former owner of the real estate providing such ownership interest coincided with the operation of a facility shall be responsible for correcting and controlling any nuisance condition occurring at the facility. Such owners or operators shall be jointly and severally responsible for correcting and controlling such nuisance conditions.

7. 329 IAC 2–6–3 shall be modified to read as follows:

 All owners or operators (present or past) of a closed facility or the owner of real estate upon which a closed facility is located or any former owner of the real estate providing such ownership interest coincided with the operation of a facility shall be responsible for eliminating any threat to human health or the environment. Such owners or operators shall be jointly and severally responsible for correcting and controlling such conditions.

8. 329 IAC 2–9–4(2)(e) shall be modified to read [as] follows:

 Other nonapparent deminimus [sic] quantities of free liquids as authorized by the Porter County Health Officer where it has been determined that the disposal of such liquids will not create

a threat to human health or the environment.

9. 329 IAC 2-13-2(a) shall be modified to add a new sub (5) as follows:

(5) Install appropriate devices for the management of methane gas at the facility.

10. 329 IAC 2-15-7(a)(2) shall be modified to read as follows:

Inspection of the facility at least four (4) times per year with a written report on the condition of the facility to be submitted to the Porter County Health Officer within thirty (30) days of such inspection.

11. Any and all references contained in 329 IAC 2 to the "Commissioner" shall be modified to read the "Porter County Health Officer".

12. Any and all survey requirements contained in 329 IAC 2 of less than one-half (½) mile shall be amended to read that the area covered shall be one-half (½) mile from the boundary line of the sanitary landfill or solid waste land disposal facility.

## SECTION III:

Any owner and/or operator of a sanitary landfill and/or solid waste land disposal facility required to obtain an operating permit pursuant to 329 IAC 2 shall also be required to file a duplicate of the application required under 329 IAC 2-5-1 and 329 IAC 2-8-2 with the Porter County Health Officer. The Porter County Health Officer and the staff of the Health Department shall review such application and within forty-five (45) calendar days of receipt thereof decide whether or not to issue the applicant a local permit for operation of a sanitary landfill and/or solid waste land disposal facility.

The Porter County Board of Health shall promulgate such additional rules and procedures for review of permit applications as it may deem, from time to time, necessary and appropriate. Such additional rules and regulations to include reasonable opportunity for the public to review and comment on any permit application or renewal prior to the Health Officer's decision to grant or deny a permit issuance or renewal.

Operation of a sanitary landfill and/or solid waste land disposal facility in violation of any of the technical criteria contained in Section II of this Ordinance shall be grounds for suspension or revocation of a local operating permit. The Porter County Board of Health shall establish reasonable rules and regulations for implementing a procedure for suspension or revocation of local operating permits granted under this Ordinance.

The Porter County Health Officer shall charge a fee for processing all applications for sanitary landfill and/or solid waste land disposal facility permits under this Ordinance. Such permit fee shall be equivalent to the costs incurred by the Health Officer and the staff of the Porter County Health Department in reviewing and processing applications for the issuance of permits under this Ordinance. The Porter County Board of Health shall establish a procedure for documenting and identifying the costs associated with processing permits issued under this Ordinance. Such costs to include, but not necessarily limited to, the reimbursement to the County of Porter for the man-hours committed to the review and processing of an application as well as the costs associated with the retaining of any outside consultants or experts for purposes of reviewing permit applications.

All permit applications and applications for renewal of permits under the provisions of this Ordinance shall be accompanied with a certified or cashier's check in the amount of One Thousand Dollars ($1,000.00). At the conclusion of the permit application review process, the Porter County Health Officer shall submit an itemized cost statement to the applicant for a permit or a renewal, and the applicant shall reimburse the County of Porter in a sum equivalent to the aforementioned itemized statement (minus a credit for the One Thousand Dollars ($1,000.00) initial payment) within sixty (60) days of receipt thereof.

SECTION IV:

The Porter County Board of Health shall serve as an appeals council for any permit applicant aggrieved by the decision of the Porter County Health Officer in any aspect of the Health Officer's implementation of the provisions of this Ordinance. The Porter County Board of Health shall implement a procedure for handling such appeals.

SECTION V:

Every operator of a sanitary landfill and/or solid waste land disposal in Porter County shall be assessed a fee of Twenty Cents (20¢) per cubic yard of solid waste deposited in their sanitary landfill and/or solid waste land disposal facility. The Porter County Board of Health shall implement reasonable rules and regulations for assuring compliance with the cubic yard fee assessment contained herein and shall be responsible for monitoring compliance with the payment of said fee.

All such fees collected hereunder shall be deposited in a cumulative non-reverting fund administered and managed by the Porter County Treasurer. Said fund shall henceforth be known as the Porter County Local Solid Waste Management Fund.

Monies contained in said fund may only be expended pursuant to an appropriation approved by the Porter County Council pursuant to applicable Indiana State Statutes controlling the appropriation and expenditure process.

Monies deposited in the Porter County Local Solid Waste Management Fund shall first be appropriated by the Porter County Council and expended by the Porter County Board of Health to pay the costs associated with the monitoring and regulating responsibilities required by this Ordinance.

The remainder of the funds contained in the Porter County Local Solid Waste Management Fund shall be appropriated by the Porter County Council and expended by the Porter County Board of Health pursuant to a program of grant funding to local units of government and private industry to promote, encourage, and implement recycling activities and programs in Porter County. The Porter County Board of Health shall formulate guidelines for implementation of the recycling grant program.

SECTION VI:

Violation of any of the provisions, terms or conditions of this Ordinance shall expose any owner and/or operator of a sanitary landfill and/or solid waste land disposal facility to a fine not to exceed the sum of Five Hundred Dollars ($500.00). Each day that a violation is allowed to continue shall be considered a separate and distinct violation of the terms and provisions of this Ordinance and shall expose the owners and/or operator of a sanitary landfill and/or solid waste land disposal facility to the Five Hundred Dollar ($500.00) fine provision.

SECTION VII:

The effective date of this Ordinance shall be September 1, 1989.

SECTION VIII:

Should any section or provision of this Ordinance be declared unconstitutional, or invalid for any reason, the remainder of this Ordinance shall not be affected thereby.

ALL OF WHICH HAVING BEEN ORDAINED, by the Board of Commissioners of the County of Porter, State of Indiana, this 17 day of July, 1989.

BOARD OF COMMISSIONERS OF THE COUNTY OF PORTER, STATE OF INDIANA

/s/ William R. Carmichael—Chairman
/s/ Larry D. Sheets—Member
/s/ Brian E. Gesse—Member

ATTESTED:

Jacquelyn Sterling
County Auditor