WIGGINS, Circuit Judge:
 

 The California Apple Commission (“the Commission”), created by a majority vote of California Apple producers, pursuant to California Food & Agriculture Code §§ 75501
 
 et seq.,
 
 assesses a fee of one-fourth cent per pound of apples marketed on all producers of more than 40,000 pounds of California apples per year. The assessments are used predominantly to promote .the sale of California apples. Bidart Brothers (“Bidart”), a major producer of California apples, brought suit in the Eastern District of California seeking declaratory and injunctive relief on the grounds that the Apple Commission legislation violated its First Amendment free speech and freedom of association rights, and its Fourteenth Amendment Equal Protection Rights. The district court granted a preliminary injunction, ordering the Commission to segregate all assessments on Bidart in a separate account, and to refrain from using those funds pending outcome of the case. The Commission appeals, arguing that the district court did not have subject matter jurisdiction because of the Tax Injunction Act (“TIA”), 28 U.S.C. § 1341, which prohibits federal district courts from enjoining “the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state.” The Commission appeals only the district court’s finding that the Apple Commission assessment is not a “State tax” under the TIA. We have jurisdiction under 28 U.S.C. § 1292(a)(1) and affirm, finding that the Apple Commission assessment is not a tax under the TIA, and thus the TIA did not deprive the district court of subject matter jurisdiction.
 

 FACTS
 

 In 1990, California passed legislation authorizing the creation of the Commission. Cal.Food & Agric.Code §§ 75501
 
 et seq.
 
 (“Food Code”). The legislature made several declarations in the legislation regarding the apple industry and the purposes of the statute: the production and marketing of apples constitutes “an important industry of [California] which provides substantial and necessary revenues for the state and employment for its residents,”
 
 id.
 
 § 75501; “[t]he maintenance of the apple industry ... is necessary to assure the public of a continuous supply of this vital food product and the maintenance of needed levels of income for those persons engaged in the industry,”
 
 id.
 
 § 75502; the maintenance of the apple industry is a “public interest,”
 
 id.
 
 § 75503; and the legislation was enacted under California’s police power to protect the “health, peace, safety, and general welfare of the state.”
 
 Id.
 

 
 *928
 
 In 1994, a majority of California’s apple producers voted in favor of creating the Commission, pursuant to Food Code §§ 75611-13. Commissioners were elected and organizational meetings were held,
 
 id.
 
 §§ 75531-75546, and the schedule for assessments upon apple producers was established pursuant to Food Code § 75630(c). The assessment is currently one-fourth cent, and cannot exceed three-fourths cent, unless a majority of apple producers approve.
 
 Id.
 

 A failure to pay Commission assessments can result in penalties for late payment,
 
 id.
 
 § 75636, or an injunction preventing a violator from marketing apples.
 
 Id.
 
 § 75643(c). The Commission is given the power,
 
 inter alia,
 
 to conduct production research,
 
 id.
 
 § 75592, promote the sale of apples,
 
 id.
 
 § 75594, and collect and disseminate information.
 
 Id.
 
 § 75595. The Commission will be terminated after five years if the majority of apple producers vote to do so.
 
 Id.
 
 § 75651. If the Commission is terminated, funds remaining with the Commission will be returned on a pro rata basis to all producers from whom assessments were collected in the previous year.
 
 Id.
 
 § 75655.
 

 The Commission is explicitly declared to be a division of the state government,
 
 id.
 
 § 75531, and the secretary of agriculture of California is given certain measures
 
 of control
 
 over it.
 
 See, e.g., id.
 
 §§ 75532-34, 75585, 75589. However, the state is not liable for the Commission’s acts or contracts,
 
 id.
 
 § 75546, and the Commission may sue for relief from a decision of the secretary.
 
 Id.
 
 § 75533.
 

 Bidart grows approximately ten percent of the apples in California. Bidart paid the first Commission assessment on September 15, 1994, under protest. Bidart filed a complaint in the district court on October 4,1994, seeking deelaratoiy and injunctive relief, contending that the Apple Commission legislation violated its First Amendment free speech and freedom of association rights, and its Equal Protection rights.
 

 The district court held that the TIA did not deprive- the court of jurisdiction because the Apple Commission assessment was not a state tax within the meaning of the TIA. Finding that Bidart had demonstrated a probability of success on the merits, a possibility of irreparable harm, and the balance of hardships tipping in its favor, the court granted a preliminary injunction in favor of Bidart. The court ordered the Commission to place the assessments collected from Bi-dart in a segregated interest bearing account pending the final outcome of the case.
 

 On appeal, the Commission challenges the jurisdiction of the district court, arguing only that the Commission assessments are state taxes within the meaning of the TIA. The existence of subject matter jurisdiction is a question of law reviewed
 
 de novo. Hoeck v. City of Portland,
 
 57 F.3d 781, 784 (9th Cir.1995).
 

 DISCUSSION
 

 The TIA is a limitation on the jurisdiction of federal courts. It reads in full:
 

 The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.
 

 28 U.S.C. § 1341.
 

 The Ninth Circuit has not articulated a standard for determining whether an assessment imposed by a state entity is a tax within the meaning of the TIA.
 
 [1]
 
 The Commission argues that we should apply the standard for determining whether an assessment is a tax entitled to priority under the bankruptcy laws, articulated in
 
 In re Farmers Frozen Food Co.,
 
 221 F.Supp. 385 (N.D.Cal.1963),
 
 aff'd sub nom. J.M. Dungan v. Department of Agric.,
 
 332 F.2d 793 (9th Cir.1964) (per curiam). That test, derived from a number of other bankruptcy cases, listed four “elements which characterize an
 
 *929
 
 exaction of a ‘tax’ within the meaning” of the bankruptcy laws.
 
 Id.
 
 at 387.
 

 (a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;
 

 (b) Imposed by, or under authority of the legislature;
 

 (c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;
 

 (d) Under the police-or taxing power of the state.
 

 Id.
 

 [2]
 

 Much like the assessménts in the case at bar, the assessments in
 
 Farmers Frozen Food
 
 were imposed upon strawberry handlers and producers after the approval of those entities, and were used for,
 
 inter alia,
 
 the marketing of strawberries.
 
 Id.
 
 at 389. The
 
 Farmers Frozen Food
 
 test was endorsed again by this court in
 
 In re Lorber Industries of California, Inc.,
 
 675 F.2d 1062, 1066 (9th Cir.1982), in finding that unpaid sewer user fees were debts and not unpaid taxes for the purpose of bankruptcy priority.
 
 Id.
 
 at 1067.
 

 The
 
 Farmers Frozen Food
 
 test, however, does not provide a universal, definition of “tax” applicable in every legal context. In
 
 Union Pacific Railway Co. v. Public Utility Commission,
 
 899 F.2d 854 (9th Cir.1990), this court considered whether Oregon’s assessment upon railroads operating in Oregon was a “tax” under 49 U.S.C. § 11503(b)(4), which prohibits the imposition by states of a “tax that discriminates against a rail carrier.” We observed that a number of “cases have held in a variety of contexts that government levies did not constitute ‘taxes’ in light of the nature of the levy and the purpose of the pertinent constitutional or statutory provision,”
 
 id.
 
 at 858, and because the assessments had been imposed mainly for the purpose of regulation, rather than to raise revenue.
 
 Id.
 
 at 859. We found that the Oregon assessment was not a tax because the funds did not go into Oregon’s general fund, but were used exclusively to defray the costs of an elaborate regulatory system.
 
 Id.
 
 We declined to apply the
 
 Farmers Frozen Food
 
 test, finding that “‘the characterization of a payment as a “tax” in certain contexts has no “talismanic significance,” ’ ” especially “when the term is used in the context of an elaborate statutory scheme such as that created by the Bankruptcy Act.”
 
 Id.
 
 at 861 & nn. 13-14 (internal citations omitted).
 

 In light of the purpose of the TIA, it would not be appropriate to adopt the
 
 Farmers Frozen Food
 
 test to determine whether a state assessment is a tax under the TIA. The legislative history of the TIA reflects Congress’s concerns about the damaging effect of state tax suits in federal court on state budgets.
 

 The existing practice of the Federal courts in entertaining tax-injunction suits against State officers makes it possible for foreign corporations doing business in such States to withhold from them and their governmental subdivisions, taxes in such vast amounts and for such long periods of time as to seriously disrupt State and county finances. The pressing needs of these States for this tax money is so great that in many instances they have been compelled to compromise these suits, as a result of which substantial portions of the tax have been lost to the States without a judicial examination into the real merits of the controversy.
 

 S.Rep. No. 1035, 75th Cong., 1st Sess. 2 (1937); H.R.Rep. No. 1503, 75th Cong., 1st Sess. 2 (1937);
 
 see also
 
 81 Cong.Rec. 1416-1417 (1937) (similar language).
 
 [3]
 
 As the Supreme Court has explained, if injunctive relief from state taxes were available, “state
 
 *930
 
 tax administration might be thrown into disarray,” and “‘[d]uring the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State’s budget, and perhaps a shift to the State of the risk of taxpayer insolvency.’ ”
 
 Rosewell v. LaSalle Nat'l Bank,
 
 450 U.S. 503, 527, 101 S.Ct. 1221, 1236, 67 L.Ed.2d 464 (1981) (quoting
 
 Perez v. Ledesma,
 
 401 U.S. 82, 128 n. 17, 91 S.Ct. 674, 699 n. 17, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part and dissenting in part)).
 

 With these purposes in mind, the
 
 Farmers Frozen Food
 
 test is inappropriate to define a “tax” in the TIA context. First, the
 
 Farmers Frozen Food
 
 test is so broad that it would prohibit federal courts from adjudicating the propriety of state assessments that are administered by entities only loosely related to a state legislature, that do not threaten the flow of general revenue to or the budgets of state governments, and that could not fairly be defined as “taxes” under the TIA. Second, the definition of tax in one context, such as bankruptcy, has no “talismanic significance.”
 
 Union Pacific,
 
 899 F.2d at 861. Because the bankruptcy laws’ goal of equitably distributing the assets of a debtor has little to do with the protection of state budgets from an interruption in the flow of state revenues, a different definition of “tax” under the TIA is appropriate.
 

 In defining “tax” under the TIA, other circuits have appropriately distinguished between assessments that if enjoined would threaten the flow of central revenues of state governments and assessments that are not so critical to general state functions. In
 
 San Juan Cellular Telephone Co. v. Public Service Commission of Puerto Rico,
 
 967 F.2d 683 (1st Cir.1992), the First Circuit, in an opinion by then-judge Breyer, examined the definition of “tax” under the Butler Act,
 
 [4]
 
 “a statute similar to the better known Tax Injunction Act.”
 
 Id.
 
 at 684. San Juan Cellular Telephone Company challenged the Puerto Rico Public Service Commission’s “periodic fee” of three percent of gross revenues on the ground that FCC regulations preempted the local government’s authority to impose such a fee. The district court granted declaratory relief to San Juan Cellular, and the Public Service Commission appealed on the ground that the district court did not have jurisdiction under the Butler Act.
 

 The court surveyed a number of eases that had examined in different contexts whether state assessments were “taxes” or regulatory “fees”:
 

 [The cases] have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other. The classic “tax” is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic “regulatory fee” is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency’s regulation-related expenses.
 

 Courts facing cases that lie near the middle of this spectrum have tended (sometimes with minor differences reflecting the different statutes at issue) to emphasize the revenue’s ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency’s costs of regulation.
 

 Id.
 
 at 685 (internal citations omitted).
 

 After examining the cases “near the middle” of the spectrum, the court determined that the Public Service Commission assessments were regulatory “fees” and not “taxes.”
 
 Id.
 
 at 686. The fees were assessed by a regulatory agency, placed in a special fund, and used only to offset “the expenses generated in specialized investigations and studies, for the hiring of professional and expert services and the acquisition of the equipment needed for the operations provided by law
 
 *931
 
 for the Commission.”
 
 Id.
 
 The court rejected the Commission’s argument that Puerto Rico Budget and Management Office’s approval of the Commission’s budget, and the possibility that unused fees collected by the Commission would be delegated to the general fund of Puerto Rico after five years, indicated that the funds collected were for general public purposes.
 
 Id.
 
 at 687. The court found no evidence that any significant amount of the fees collected had been, or were likely to be, spent for general public purposes.
 
 Id.
 

 The
 
 San Juan Cellular
 
 test calls for the consideration of three primary factors in determining whether an assessment is a tax: (1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed. These factors address the Congressional policies behind the TIA more appropriately than the
 
 Frozen Food Test.
 
 Applying these factors to the Apple Commission assessment demonstrates that the assessment is not a tax under the TIA.
 

 1. The Entity that Imposes the Assessment
 

 An assessment imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative agency.
 
 Id.
 
 at 685. In
 
 San Juan Cellular,
 
 the “periodic fee” was assessed by an agency, weighing in favor of finding that it was not a “tax” under the Butler Act and TIA.
 
 Id.
 
 at 686. Although the fact that an assessment is imposed by a non-legislative body is not dispositive in determining that it is not a tax,
 
 see, e.g., Indiana Waste Sys., Inc. v. County of Porter,
 
 787 F.Supp. 859, 864-65 (N.D.Ind.1992) (fee for landfills imposed by county board of health a “tax” under TIA);
 
 Butler v. State of Maine Supreme Judicial Court,
 
 767 F.Supp. 17, 19 (D.Me.1991) (jury fee imposed pursuant to administrative order by the Maine Supreme Court a “tax” under TIA), the imposition of the assessments in the case at bar by the Apple Commission weighs slightly in favor of Bidart.
 

 The creation of the Commission was authorized by the legislature in 1990, and the legislature set the assessment rate at one-fourth cent per pound for the 1994-95 year. Food Code § 75630. The secretary of agriculture is given some control over the Commission’s activities,
 
 see, e.g., id.
 
 §§ 75532-34, 75585, 75589, and producers who fail to pay fees can be assessed late penalties,
 
 id.
 
 § 75636, or enjoined from marketing apples.
 
 Id.
 
 § 75643(e). The Commission, however, only came into existence upon a majority vote of apple producers,
 
 id.
 
 §§ 75611-13, and can adjust the assessment amount in future years,
 
 id.
 
 § 75630(b), (d). The legislature has declared that the Commission is a corporate body, with the power to sue or be sued, and enter into contracts,
 
 id.
 
 § 75541, and the state is not liable for the Commission’s acts or its contracts.
 
 Id.
 
 § 75546. Ultimately, the apple producers may elect to terminate the Commission’s existence.
 
 Id.
 
 § 75651. Overall, although the current assessment at issue was imposed by the legislature, the independence of the Commission weighs in favor of a finding that the assessments are not taxes.
 

 2. The Parties Upon Whom the Assessment is Imposed
 

 An assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class.
 
 San Juan Cellular,
 
 967 F.2d at 685.
 
 See also Trailer Marine Transp. Corp. v. Rivera Vazquez,
 
 977 F.2d 1, 6 (1st Cir.1992) (fact that fees used to compensate automobile accident victims were “collected only from those seeking the privilege of driving on state highways” weighed in favor of finding that fees were not taxes under Butler Act and TIA). However, an assessment upon a narrow class of parties can still be characterized as a tax under the TIA.
 
 See Wright v. McClain,
 
 885 F.2d 143, 145 (6th Cir.1987) (fees imposed upon parolees for supervision and victim compensation were “taxes” under TIA);
 
 Tramel v. Schrader,
 
 505 F.2d 1310, 1314-16 (5th Cir.1975) (assessments upon street residents for street improvements were “taxes” under TIA);
 
 Indiana Waste Sys.,
 
 787 F.Supp. at 864-65 (fee imposed on landfill owners a “tax” under TIA);
 
 Butler,
 
 
 *932
 
 767 F.Supp. at 19 (jury fee imposed on plaintiffs a “tax” under TIA).
 

 The Commission assessments in the ease at bar are imposed only upon apple producers. Food Code § 75630. This narrow imposition weighs in favor of Bidart, but like the nature of the entity imposing the assessment, is not dispositive.
 

 3. The “Ultimate Use” of the Assessments
 

 Where the first two factors are not dispositive, courts examining whether an assessment is a tax “have tended ... to emphasize the revenue’s ultimate use.”
 
 San Juan Cellular,
 
 967 F.2d at 685. Assessments treated as general revenues and paid into the state’s general fund are taxes.
 
 See Travelers Ins. Co. v. Cuomo,
 
 14 F.3d 708, 713 (2nd Cir.1993),
 
 rev’d on other grounds sub nom. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,
 
 — U.S.-, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995);
 
 Robinson Protective Alarm Co. v. City of Philadelphia,
 
 581 F.2d 371, 376 (3rd Cir.1978);
 
 Butler,
 
 767 F.Supp. at 19.
 

 An assessment placed in a special fund and used only for special purposes is less likely to be a tax.
 
 See Trailer Marine,
 
 977 F.2d at 6 (fees held separately from general funds and used only to compensate automobile accident victims were not taxes under TIA);
 
 Government Suppliers Consolidating Servs., Inc. v. Bayh,
 
 975 F.2d 1267, 1271 n. 2 (7th Cir.1992) (fees imposed on waste transportation vehicles used to implement waste disposal regulatory system and not reverting to general funds were not taxes under TIA),
 
 cert. denied,
 
 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993);
 
 San Juan Cellular,
 
 967 F.2d at 686.
 

 However, even assessments that are segregated from general revenues are “taxes” under the TIA if expended to provide “a general benefit to the public.”
 
 San Juan Cellular,
 
 967 F.2d at 685. In
 
 Wright,
 
 an assessment upon a parolee was a tax under the TIA, even though it was earmarked for the Corrections Department budget, because it was used to defray the costs of monitoring parolees and to compensate victims, purposes relating “directly to the general welfare of the citizens” of the state. 835 F.2d at 145. The court in
 
 Schneider Transport, Inc. v. Cattanach,
 
 657 F.2d 128 (7th Cir.1981),
 
 cert. denied,
 
 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982), found vehicle registration fees to be taxes because they were used for transportation purposes, including highway construction, even though the fees were deposited in funds separate from the state’s general funds.
 
 Id.
 
 at 132.
 
 See also Indiana Waste Sys.,
 
 787 F.Supp. at 865 (holding that “fee” imposed on landfill owners was a “tax” even though placed in a segregated fund and spent only on the administration of landfills and for recycling).
 

 The assessment in the case at hand is placed in a segregated fund, and used only for Commission purposes. Food Code § 75595.5. Unlike
 
 San Juan Cellular,
 
 where the assessment could be transferred to the general fund of Puerto Rico after five years, 967 F.2d at 687, the Commission assessments are returned to the apple producers if the Commission is terminated. Food Code § 75655. Thus, the Commission funds are more clearly segregated than the assessments in
 
 San Juan Cellular,
 
 which were not taxes.
 

 Even though Commission funds are segregated from California’s general funds, the Commission argues that the assessments should be considered taxes because the Commission law was enacted “for the benefit of the entire community.” The Commission points to,
 
 inter alia,
 
 the legislative findings that the industry “provides substantial and necessary revenues for the state and employment for its residents,” Food Code § 75501, and the statute’s purpose to protect “the health, peace, safety, and general welfare of the people of [California],”
 
 id.
 
 § 75503, and “educate and instruct the public with respect to the uses, healthful properties, and nutritional value of apples.”
 
 Id.
 
 § 75594.
 

 Such an indirect public benefit does not make the Commission’s expenditures a tax. In
 
 In re Head Money Cases,
 
 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884), the Supreme Court found that an assessment upon ship owners for each immigrant brought into the United States was not a tax
 
 *933
 
 in violation of the Constitution’s uniform taxation requirement, even though the fee was used to care for immigrants “for the protection of the citizens among whom they are landed.”
 
 Id.
 
 at 596, 5 S.Ct. at 252. The court observed that though the money was paid into the general funds of the treasury, it was collected only from vessel owners who benefitted from immigration, and did “not go to the general support of the government.”
 
 Id.
 
 We recently cited that case in
 
 Union Pacific,
 
 in support of our holding that even “an assessment levied for public purposes” would not be a tax where it was part of a regulatory program. 899 F.2d at 861. The indirect benefit that may accrue to California’s general populace through increased demand for apples as a result of advertising or education is not the type of public benefit that makes an assessment a tax.
 

 The Commission’s argument that the assessment is a tax because the Commission performs no “regulatory” activities is unavailing. Even though distinguishing assessments covered by the TIA from those not covered is often characterized as a determination of whether an assessment is a “tax” or a regulatory “fee,”
 
 San Juan Cellular,
 
 967 F.2d at 685, the ultimate question remains whether an assessment is a “State tax.”
 
 See
 
 28 U.S.C. § 1341. In
 
 San Juan Cellular,
 
 the fee was imposed by a “regulatory” agency, but the actual traditional “regulatory” use of the fee was unclear.
 
 [5]
 
 In
 
 Trailer Marine,
 
 the First Circuit found that the fee imposed on automobile owners was not a tax, even though the fee at issue was “neither to raise general revenue for Puerto Rico nor to regulate conduct in the usual sense of that term.” 977 F.2d at 5.
 

 Though the Commission’s primary function is to promote the purchase of California Apples, the Commission does have the power to make suggestions to the secretary of agriculture about maturity standards, Food Code § 75601, and to conduct production research.
 
 Id.
 
 § 75592. Even if these do not entail “regulatory” activities, the Commission legislation as a whole, “provides more narrow benefits to regulated companies,”
 
 San Juan Cellular,
 
 967 F.2d at 685, than even traditional “regulatory” functions. Regardless of the labels placed on the Commission’s duties and functions, its assessments are not “taxes” within the meaning of the TIA.
 
 [6]
 

 CONCLUSION
 

 Because the Commission’s assessments are ultimately imposed by a non-legislative body on a small number of organizations, kept segregated from general California funds, and spent only for a purpose that does not directly benefit the public at large, the assessments are not taxes under the TLA. The district court properly found that it was not deprived of jurisdiction by 28 U.S.C. § 1341. We AFFIRM.
 

 [1]
 

 . Most of the TIA cases in this circuit have considered whether a state provides a “plain, speedy and efficient remedy” for a challenge to a state tax.
 
 See, e.g., Amarok Corp. v. State of Nevada, Dep't of Taxation,
 
 935 F.2d 1068 (9th Cir.1991);
 
 Direct Marketing Assoc., Inc. v. Bennett,
 
 916 F.2d 1451 (9th Cir.1990);
 
 Retirement Fund Trust of the Plumbing v. Franchise Tax Board,
 
 909 F.2d 1266 (9th Cir.1990).
 

 [2]
 

 . The court cited a number of bankruptcy cases, including
 
 United States v. New York,
 
 315 U.S. 510, 515, 62 S.Ct. 712, 714, 86 L.Ed. 998 (1942);
 
 City of New York v. Feiring,
 
 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941); and New
 
 Jersey v. Anderson,
 
 203 U.S. 483, 492, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906).
 

 [3]
 

 . The Congressional Committees also stated that it was generally perceived as unfair that non-citizens of a state could use diversity jurisdiction to challenge state tax schemes before paying the tax, while many state citizens, not having the luxury of diversity jurisdiction, were prohibited by their own state from challenging taxes in state court without first paying the tax.
 
 See
 
 S.Rep. No. 1035, 75th Cong., 1st Sess. 1-2 (1937); H.R.Rep. No. 1503, 75th Cong., 1st Sess. 2 (1937).
 

 [4]
 

 . "No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of ... [Puerto Rico] shall be maintained in the ... [United States District Court for the District of Puerto Rico].” 48 U.S.C. § 872.
 

 [5]
 

 . The money was used to “defrayf] the expenses generated in specialized investigations and studies, for the hiring of professional and expert services and the acquisition of the equipment needed for the operations provided for the Commission." 967 F.2d at 686.
 

 [6]
 

 . Our decision in
 
 Miller v. City of Los Angeles,
 
 755 F.2d 1390 (9th Cir.),
 
 cert. denied,
 
 474 U.S. 995, 106 S.Ct. 408, 88 L.Ed.2d 359 (1985), does not dictate otherwise. First, the
 
 Miller
 
 panel did not consider the TIA, refusing instead to consider a challenge to an assessment for street widening because of the principle of comity.
 
 Id.
 
 at 1391. Second, the assessment's characterization as a "tax" was not questioned and no standard for determining whether an assessment is a tax was articulated.
 
 Id.
 
 Finally, under the standard we adopt today, the assessment in
 
 Miller
 
 is distinguishable from the Commission's assessment because the
 
 Miller
 
 assessment was imposed directly by the city of Los Angeles, and was used for a public purpose — street improvements.
 
 Id. See Schneider Transport,
 
 657 F.2d at 132 (holding that assessment used for transportation purposes was a "tax” under the TIA).