Ernest C. RASKAUSKAS, Plaintiff,

v.

TOWN OF BETHANY BEACH, a municipal corporation of the State of Delaware; Town of Bethany Beach Board of Commissioners; Vernon H. Dibeler, individually and as President of the Town of Bethany Beach Board of Commissioners and as Mayor of the Town of Bethany Beach; Karl K. Birks, William E. Trainor, Jr., William E. Marshall, William J. Collins, Sidney A. Bennett, Arnold L. Brown, individually and as members of the Town of Bethany Beach Board of Commissioners; Bayard V. Coulter, individually and as Town Manager of the Town of Bethany Beach; Raymond E. Hudson, individually and as Building Inspector for the Town of Bethany Beach; Town of Bethany Beach Police Department, Herbert Carey, individually and as Chief of the Town of Bethany Beach Police Department; and John Jones, individually and as an officer of the Town of Bethany Beach Police Department, Defendants.

Civ. A. No. 80–492.

United States District Court,
D. Delaware.

Jan. 18, 1983.

George F. Gardner III, of Morris, Nichols, Arsht & Tunnell, Dover, Del., for plaintiff.

Myron T. Steele of Prickett, Jones, Elliott, Kristol & Schnee, Dover, Del., and Robert Halbrook of Wilson, Halbrook & Bayard, Georgetown, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

Plaintiff, Ernest C. Raskauskas, brought this action[1] under the Civil Rights Act of 1871, 42 U.S.C. § 1983, against the Town of Bethany Beach ("the Town"), its Board of Commissioners, its Town Manager, its Building Inspector, its Police Department, and the individuals occupying those positions, seeking monetary damages in excess of two million dollars. Plaintiff seeks compensation (1) for alleged violations of his civil rights secured by the Constitution and laws of the United States, and (2) for the torts of false arrest and/or false imprisonment and the intentional infliction of emotional distress under Delaware law allegedly caused by the defendants between March 18, 1979 and June 19, 1979. The parties filed cross motions for summary judgment. However, following briefing and oral argument of those motions, the Court *sua sponte* raised the legal issue whether this Court is barred from entertaining this suit because of the principles of comity and requested the parties to file supplemental briefs on this issue. This Memorandum Opinion, therefore, will address only the latter issue, because the Court is convinced that under the principle of comity, it may not proceed with this action.

## BACKGROUND FACTS

Since 1967, Raskauskas[2] has been actively involved in real estate development, including the construction of homes and sale of lots in the Bethany Beach area. (Docket Item ["D.I."] 20 at 14–18.) Business entities owned or controlled by Raskauskas have built approximately 450 houses and have been involved in significant commercial development at Bethany Beach. (*Id.* at 16.) In May and June of 1979, Raskauskas was developing Bethany West, Villas of Bethany West Condominiums and Lake Bethany, all of which were residential developments within the town limits of Bethany Beach.

The Town is a municipal corporation of the State of Delaware organized and incorporated by an act of the General Assembly of the State of Delaware. Jurisdiction was conferred upon the Town, by one or more acts of the General Assembly of the State of Delaware, to enact, establish, publish, modify, amend, repeal and enforce municipal ordinances, laws or regulations for protection of persons and property and for the public health and welfare within the geographical boundaries of the Town. The Town is governed by Town Commissioners having overall responsibility for the supervision of municipal affairs and for the government and operation of Bethany Beach. A Town Manager is appointed by the Board of Commissioners to hold office at a compensation set by the Commissioners and is removable at will. His responsibilities are set by the Commissioners by oral or written direction and by events which arise in the daily supervision of the operation of the Town. (D.I. 1, ¶¶ 2–4.)

The Town also employs a building inspector who has the responsibility for enforcing the provision of the Town's Zoning Code, including the inspection for and approving of the issuance of building permits and certificates of occupancy. (D.I. 17 at 2.) Additional employees of Bethany Beach include a collector of taxes and two other

---

1. Jurisdiction is alleged to exist by virtue of 28 U.S.C. §§ 1331 and 1343(3) & (4). In addition, plaintiff asserts that jurisdiction also exists by virtue of diversity of citizenship, 28 U.S.C. § 1332. However, this jurisdictional allegation is legally deficient because it is nowhere alleged that the plaintiff was a citizen, as distinct from a resident, of the State of Maryland when this suit was filed. Indeed, the only allegations indicate that the plaintiff resided in Maryland when the events alleged in the complaint occurred on March-June, 1979, and not on October 10, 1980 when the suit was filed. *Krasnov v. Dinan,* 465 F.2d 1298 (C.A. 3, 1972); *Jagiella v. Jagiella,* 647 F.2d 561 (C.A. 5, 1981).

2. Raskauskas is a member of the Bar of the District of Columbia and was an active practitioner from the latter part of 1955 until 1972. (D.I. 20, pp. 6–13.)

clerks to help with the day-to-day administration of Bethany Beach. (D.I. 14 at 10.) Since 1967 the Town has adopted ordinances and over the years has established systems, procedures, and customs to implement and enforce these ordinances. (D.I. 20 at 51–55.)

In May 1979, and for approximately a year prior thereto, Raskauskas and the Town were engaged in a dispute, administrative appeals and correspondence regarding the Town's assessment of real estate taxes on Raskauskas' land. (See D.I. 14 at 90 & Ex. 6 & 7.) On May 10, 1979, Raskauskas, on behalf of East Coast Resorts Inc., one of his companies, wrote to the Town requesting a reduction of the 1978 tax assessments. (Id. Ex. 10.) On May 16, 1979, Raskauskas again wrote requesting that his real estate tax assessments on the property owned by his various companies be placed on the agenda for consideration at the next Board of Commissioner's meeting scheduled on May 18, 1979. (Id. Ex. 11.) On May 18, 1979, the Board of Commissioners met and considered the contentions of East Coast Resorts Inc., relating to the 1978 and 1979 real estate taxes and assessments. While Raskauskas did not personally attend the May 18th meeting, he was advised of the disposition of his contentions by letter dated May 24, 1979 from Vernon H. Dibeler, President of the Board of Commissioners. That letter stated that there would be changes in the 1979 real estate tax assessments but that there would be no retroactive reduction for tax bills rendered in previous years. (Id. Ex. 12.)

Also at the May 18th meeting, the Board of Commissioners enacted Town Ordinance 86 which amended its prior Ordinance 53. Ordinance 86 provided that no building or construction permit would be issued by the Town for any land lot on which real estate taxes had not been paid in full. Because Raskauskas was a developer who owed back real estate taxes, he was directly affected by Ordinance 86. Several days after the May 18th Board of Commissioner's meeting, Raskauskas requested, but was denied, a copy of the minutes of the May 18th meeting because of the Board's policy of not making them available to the public until formally approved at the next Board meeting. (Id. at 30.) Raskauskas apparently was unaware of Ordinance 86 until June 14, when he was advised by the Town Building Commissioner. (D.I. 17 at 12 & 19.)

Prior thereto on June 12, 1979, Raskauskas' East Coast Resorts Inc., had filed an application for a permit to build on Lots 23 and 74 in the Lake Bethany subdivision. (Id. Ex. 24.) On June 14, 1979, the Town Building Committee received and approved the building permit application. On the same date, however, the Building Inspector delivered a letter to Raskauskas enclosing a copy of Ordinance 86 and advising him that in view of that Ordinance, the building permit for Lots 23 and 74 would be withheld pending payment by Raskauskas of the 1978 real estate taxes. (D.I. 14, Ex. 14.)

Thereafter, Raskauskas called the Town Clerk asking what taxes needed to be paid. The Town Clerk was unable to answer the question but said she would attempt to have the matter placed on the agenda of the Board of Commissioners' meeting for the following evening, June 15, 1979. (D.I. 19 at 35–36.)

The next communication between Raskauskas and the Town authorities was on June 18, 1979, when the Building Inspector delivered a stop work order, on the complaint of a Commissioner, which ordered that all construction work on Lots 23 and 74 cease because no permit had been issued. (D.I. 17 at 22.) Thereafter, when Raskauskas was informed that his delinquent tax bill was $991.74, he immediately paid the taxes and penalty thereon and the Building Inspector then delivered the building permits for Lots 23 and 74.

On the afternoon of June 18, 1979, while Raskauskas was at the Town Hall, Police Officer John Jones prepared and handed to Raskauskas a summons charging him with commencing to build on Lots 23 and 74 without having obtained a permit. Raskauskas refused the summons on the grounds that it did not state the date of the offense. (D.I. 15 at 6, 21–26.) Officer

Jones again attempted to give Raskauskas the summons a second time, but Raskauskas pointed out that the Summons said "Arresting Officer" and asked Jones if he were responsible for the arrest. Officer Jones stated that he was not arresting Raskauskas and crossed out the word "Arresting" and replaced it with "Summons." Raskauskas thereafter continued to refuse to accept the Summons because it was "constitutionally vague." (*Id.* at 30; D.I. 17 at 30.) The following day Jones served Raskauskas with an arrest warrant for commencing to build on Lots 23 and 74 without having obtained a permit. (*Id.* at 39.) Raskauskas thereafter was taken to a Justice of the Peace Court. The case was continued in order to provide Raskauskas an opportunity to consult with legal counsel.[3]

The criminal prosecution of Raskauskas was transferred to the Court of Common Pleas of the State of Delaware in and for Sussex County. Trial was set for October 17, but on that date, the Court granted Raskauskas' motion to dismiss, without objection from the state prosecutor. (D.I. 27 at 11–12; D.I. 20 at 158.)

## RASKAUSKAS CLAIMS

Raskauskas alleges that the defendants have violated those rights protected by the Fourteenth Amendment of the United States Constitution. Specifically, he claims that the defendants infringed his rights protected by the Equal Protection Clause when the Town "arbitrarily, capriciously and maliciously" adopted Ordinance 86 with the designed effect to preclude Raskauskas from continuing his construction efforts without paying all of his real estate taxes. (D.I. 32 at 37–39.) Raskauskas also contends that the defendants violated his rights protected by the Due Process Clause when the defendants enacted Ordinance 86, which required Raskauskas to pay his real estate taxes before a building permit for Lots 23 and 74 would be issued. (*Id.* at 38–39.) Furthermore, Raskauskas asserts

that his liberty rights were abridged when he was arrested by Officer Jones and brought before the Justice of the Peace. Finally, Raskauskas brings state tort claims against some of the defendants based on the events which transpired on June 18–19, 1979, when Officer Jones attempted to deliver a Summons to Raskauskas and later arrested him. He charges the defendants with false arrest and/or false imprisonment and with the intentional infliction of emotional distress.

The parties addressed those issues relating to the merits of the allegations in their briefs and at oral argument; but at the conclusion of oral argument, the Court *sua sponte* posed the following question to the parties:

> Is it not essential in order for the plaintiff to recover damages in this action that the Court or jury find that the Commissioners of the Town of Bethany Beach and the other defendants sought to assess and collect property taxes on plaintiff's real estate by the adoption and enforcement of illegal procedures which deprived the plaintiff of his property and liberty in violation of his constitutional right to substantive and procedural due process guaranteed by the Fourteenth Amendment?

The parties thereafter filed supplemental briefs addressing the issue whether this Court is barred from entertaining this action because of the Tax Injunction Act, 28 U.S.C. § 1341, or the principles of comity.

## DISCUSSION

■ The Tax Injunction Act provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The Tax Injunction Act prohibits a federal district court, in most circumstances, from issuing

---

**3.** At the Justice of the Peace Court, Jones asked Raskauskas several questions but Raskauskas refused to answer on the basis of the Fifth Amendment. Raskauskas was then advised by the Court that he would be incarcerated until he answered questions relating to his name and date of birth. Raskauskas thereafter furnished this information to the Justice of the Peace. (D.I. 20 at 122.)

an injunction or granting declaratory relief from the collection of state taxes. *See California v. Grace Brethren Church,* —— U.S. ——, 102 S.Ct. 2498, 2509, 73 L.Ed.2d 93 (1982). In addition, federal courts, under the principles of comity, ordinarily will not interfere with the collection of State or local taxes when the state law affords an adequate remedy to the taxpayer. *See Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *Grace Brethren, supra; Sipe v. Amerada Hess Corp.,* 689 F.2d 396 (C.A.3 1982). The rule of equitable restraint results from the recognition that

> [t]he procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

*Grace Brethren, supra,* 102 S.Ct. at 2510, quoting *Perez v. Ledesma,* 401 U.S. 82, 128–29 n. 17, 91 S.Ct. 674, 699 n. 17, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring and dissenting).

Contrasting those policies underlying the Tax Injunction Act and the principles of comity are those policies underlying Section 1983 which generally require federal courts to provide a forum to persons who have been deprived by a State official of their federal or constitutional rights. The policies underlying Section 1983 are so strong that ordinarily no requirement exists for a Section 1983 plaintiff to exhaust state remedies before pursuing a federal or constitutional remedy. The Supreme Court in *Fair, supra,* discussed the competing policies underlying the rules of restraint reflected in the Tax Injunction Act and the principles of comity with those underlying the Civil Rights Act.

In *Fair,* the plaintiffs sought damages under Section 1983 against the state and county officials responsible for tax administration and alleged that disparate and retaliatory property assessment had deprived them of equal protection and due process of law. The Court found that a Section 1983 action that solely seeks monetary damages was an improper intrusion upon the administration of the state taxation system and that the intrusiveness would be exacerbated by the nonexhaustion doctrine of *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), because it (1) permitted taxpayers to invoke federal jurisdiction without first allowing the state to rectify any alleged impropriety, (2) disrupted the state's system of revenue collection because state tax collection officials could be summoned into federal court, and (3) would have an "undeniable chilling effect" upon the actions of all tax officials. 102 S.Ct. at 184–86. Thus, the Court held that the principles of comity barred the taxpayers from asserting Section 1983 actions against the validity of state tax systems in federal court. *Id.* 102 S.Ct. at 186.[4]

Raskauskas argues that the principles of comity should not apply in the present case because the dispute with the defendants can be "without any interference with the administration of Bethany's tax collection system since the complained of tax has long since been paid, the permit long since is-

---

4. The Supreme Court did not decide whether the Tax Injunction Act, standing alone, would require such a result. 102 S.Ct. at 181. Because this Court also concludes that the princi-

ples of comity bar the present action, it does not decide whether the Tax Injunction Act would also bar Raskauskas' claims.

sued, and the unique method of collection once imposed" long since abolished. Therefore, Raskauskas contends that any relief afforded to him arising out of the procedures which were imposed by Ordinance 86 will not intrude on the enforcement of any existing tax collection procedures. The Court disagrees.

Although the Court recognizes that Raskauskas is not seeking a tax refund and that Ordinance 86 is no longer in effect, nevertheless, it finds that the rationale and holding in *Fair, supra,* are applicable to the facts of this case. Raskauskas cannot recover damages in this suit under Section 1983 or the pendent state claims unless the Court first determines that defendants' administration of the Town's tax system and collection procedures abridged Raskauskas' constitutional rights. This determination would require the Court to examine the Town's past customs and procedures for collecting taxes as well as the procedures followed when adopting Ordinance 86 and to declare such procedures constitutionally invalid. Similarly, the Court would be required to make the same determination when evaluating the conduct of Officer Jones and the other defendants on June 18–19, 1979, if the Court were to exercise its jurisdiction granted by 28 U.S.C. §§ 1331 or 1332.[5] The Supreme Court, however, in *Fair* and *Grace* has expressly held that federal courts under the principles of comity are precluded from making such intrusive inquiries. The facts that Ordinance 86 is no longer in effect and that Raskauskas is not seeking a refund do not decrease the impact that a trial for damages in federal court would have upon municipal officials. To bring and maintain such damage suits would undoubtedly have a chilling effect upon future tax policies and procedures of the Town officials. There would be little doubt that such officials, faced with the prospect of personal liability to taxpayers would promptly cease the conduct alleged to infringe constitutional rights and would have the practical effect of suspending the collection of Town taxes. This type of intrusion into local tax laws is impermissible by a federal court and this Court will not entertain this action which seeks damages directly arising from a dispute over the procedures for the assessing and the collection of local taxes.[6]

An order will be entered in accordance with this Memorandum Opinion.

---

5. Other courts have applied the same principles of comity to actions brought under 28 U.S.C. §§ 1331 and 1332. *See e.g. Non-Resident Tax Association v. Municipality of Philadelphia,* 341 F.Supp. 1135, 1137 (D.N.J.1971), *aff'd,* 478 F.2d 456 (C.A. 3, 1973); *Soo Line Railroad Co. v. City of Harvey,* 424 F.Supp. 329 (S.D.N.D. 1976).

6. Raskauskas does not contend that a plain, speedy and efficient remedy did not exist for challenging his tax assessments or the method of collection provided in Ordinance 86 in a state forum. Furthermore, it is apparent that Raskauskas could have challenged the constitutionality of the assessment and collection procedures of Ordinance 86 under 10 *Del.C.* § 6501 and he could have pursued his Section 1983 claims in the state courts which have concurrent jurisdiction. *Allen v. McCurry,* 449 U.S. 90, 99–100 & n. 15 & 16, 101 S.Ct. 411, 417–18 & nn. 15 & 16, 66 L.Ed.2d 308 (1980).