TRADING COMPANY OF NORTH AMERICA, INC., Plaintiff,

v.

BRISTOL TOWNSHIP AUTHORITY, et al., Defendants.

No. Civ.A. 97–6061.

United States District Court, E.D. Pennsylvania.

April 27, 1999.

John W. Wilmer, Media, PA, for Trading Company of North America, Inc., plaintiff.

Karen M. Quinn, Stief, Waite, Gross, Sagoskin & Gilman, Newtown, PA, Michael T. Stewart, Peri and Stewart, Newtown, PA, for Bristol Township Authority, defendant.

Larry Haft, Timby & Dillon, P.C., Newtown, PA, for Township of Bristol, jointly and severally, defendant.

Robert S. Tintner, Fox, Rothschild, Obrien & Frankel, LLP, Phila, PA, Deborah R. Popky, Fox, Rothschild, O'Brien and Frankel, Philadelphia, PA, for Richard M. Snyder, individually, defendant.

L. Rostaing Tharaud, Marshall, Dennehey, Warner, Coleman and Goggin, Phila, PA, Joseph J. Santarone, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Norristown, PA, Larry Haft, Timby & Dillon, P.C., Newtown, PA, for Carmen Raddi, individually, defendant.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Before the court is defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. Because the Tax Injunction Act, principles of comity, and the Johnson Act bar federal jurisdiction to adjudicate plaintiff's claims, the motion will be granted.

### I. Background [1]

The plaintiff, Trading Company of North America, Inc. (Trading Company) brought this action for damages, declaratory relief, and injunctive relief against the Bristol Township Authority, Bristol Township, Richard M. Snyder, Esq.,[2] and Carmen Raddi[3] for violation of 42 U.S.C. § 1983 and wrongful use of civil process

---

1. All facts are taken either from the parties' uncontested submissions or the agreed facts summarized by the Third Circuit in its ruling dismissing an appeal pertaining to a claim of qualified immunity. *See Trading Co. of North Amer. v. Bristol Township Auth.*, 175 F.3d 1011 (3d Cir.1999).

2. Mr. Snyder was the Solicitor for the Township Sewer Department.

3. Mr. Raddi was the Bristol Township Manager.

under Pennsylvania law stemming from what Trading Company claims was the improper assessment of sewer charges.

Trading Company owns a building in Bristol Township that has one water line coming into the building and one sewer line leaving the building. The building itself is divided into three sections: two sections are used as storage, and one is occupied by a tenant. Only the tenant's section is connected to sewer and water.

According to the applicable local ordinance, sewer charges may be based only on actual water consumption. Nonetheless, for many years, Trading Company received bills for sewer charges for the two addresses that had no water connection and thus no consumption. Trading Company refused to pay those bills, and defendants subsequently filed a lien on each of those two addresses. In November 1995, Trading Company filed a Notice in state court against Bristol for the two liens requiring Bristol to file Writs of Scire Facias or suffer dismissal of the liens. One lien was dismissed by the Bucks County Court of Common Pleas in January 1996 because the Township did not file a writ; however, Bristol continued to assess the same charges until January 1997. With respect to the other lien, Trading Company filed a motion for summary judgment on the issue of whether billing should be on actual water consumption or on the number of tenants, an interpretation apparently applied by the Township. The Township did not answer the motion because it did not want an adverse judgment, and this lien was also dismissed on July 1, 1997. However, Bristol continued to assess the same charges until September 1997 when Trading Company informed Bristol that it was filing the present lawsuit. Bristol immediately stopped assessing charges,

dropped all past charges, interest and penalties, and cleared the record of the liens. The entire litigation effort to resolve the matter cost plaintiff $3,500.00

## II. Applicability of the Tax Injunction Act

The defendants now argue that this court does not have subject matter jurisdiction over the section 1983 claim brought by the plaintiff because plaintiff is indirectly attacking a state tax in violation of the Tax Injunction Act. The motion is brought by the Township of Bristol and the Bristol Township Authority and joined by Defendants Raddi and Snyder.

### A. Standards

The defendants bring this motion to dismiss when the case is listed for trial, long after the answers to the complaint have been filed, and, indeed, after several summary judgment motions and an appeal. However, because the question of jurisdiction may be raised at any stage in the proceedings and because the court's duty to satisfy itself of its own jurisdiction is ongoing, defendants may bring this motion, albeit belatedly. *See* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"); *Joyce v. United States*, 474 F.2d 215 (3d Cir.1973) (noting that though defendant could have raised issue sooner, "[w]here there is no jurisdiction over the subject matter, there is, as well, no discretion to ignore that lack of jurisdiction").[4] In evaluating such a motion to dismiss for lack of jurisdiction, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Hel-*

---

4. While defendants do not label their motion beyond stating that the court lacks subject matter jurisdiction, the court interprets this as a motion under Federal Rule of Civil Procedure 12(h)(3) rather than 12(b)(1). As the Third Circuit explained, "The distinction be-

tween a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party." *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 879 n. 3 (3d Cir.1992).

ler v. CACL Fed. Credit Union, 775 F.Supp. 839, 841 (E.D.Pa.1991) (citations omitted). Consequently, the court will consider evidence presented by the parties pertaining to jurisdiction.

### B. The Tax Injunction Act & Comity

■ The Tax Injunction Act is intended to prevent federal district courts from interfering with state revenue collection: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "[T]his legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) (citations omitted). Quoting Justice Brennan's opinion in Perez v. Ledesma, 401 U.S. 82, 128 n. 17, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), the Supreme Court stressed that federal injunctive relief might throw state tax processes into disarray, permit state taxpayers to escape ordinary procedures, and create crises in state budget planning, all to the detriment of state-federal relations. See Rosewell, 450 U.S. at 527, 101 S.Ct. 1221.

■ Declaratory relief and damages are also barred when such actions stem from an attack on state taxation practices. See Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299–300, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943) (barring declaratory relief); Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1982) (barring damages actions under section 1983)[5]. In both cases, the Supreme Court emphasized that the Tax Injunction Act was intended to promote the comity between state governments and the federal courts necessary for

federalism to function. See McNary, 454 U.S. at 103, 109–10, 102 S.Ct. 177; Great Lakes, 319 U.S. at 296–300, 63 S.Ct. 1070. Neither Great Lakes nor McNary reached the question of whether the Tax Injunction Act, standing alone, would preclude damages or declaratory relief, because the Court held that comity alone would bar such actions. See McNary, 454 U.S. at 110–11, 115–18, 102 S.Ct. 177; Great Lakes, 319 U.S. at 299, 63 S.Ct. 1070. Subsequently, the Supreme Court ruled in California v. Grace Brethren Church, 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), that the Tax Injunction Act itself barred declaratory actions. See id. at 407–11, 102 S.Ct. 2498. McNary makes it quite clear, though, that comity is as strong a basis as the Tax Injunction Act to reject federal jurisdiction:

> Petitioners will not recover damages under § 1983 unless a district court first determines that respondents' administration of the County tax system violated petitioners' constitutional rights. In effect, the district court must first enter a declaratory judgment like that barred in Great Lakes. We are convinced that such a determination would be fully as intrusive as the equitable actions that are barred by principles of comity. Moreover, the intrusiveness of such § 1983 actions would be exacerbated by the nonexhaustion doctrine of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

McNary, 454 U.S. at 113–14, 102 S.Ct. 177; see also National Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 515 U.S. 582, 586, 588, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995) (stressing that previous decisions barred district courts from granting injunctive, declaratory, or damages relief in suits challenging the constitutionality of state taxes).

■ "Taken together, the Tax Injunction Act and the Supreme Court's decision

---

5. The Third Circuit had already so ruled before McNary, relying both on the Tax Injunction Act and comity principles. See Sipe v.

Amerada Hess Corp., 689 F.2d 396, 403–04 (3d Cir.1982).

in *McNary* make it clear that a federal court cannot entertain a suit posing either an equitable or a legal challenge to state or local taxes ... if a sufficient remedy is available in state court." *Kerns v. Dukes*, 153 F.3d 96, 101 (3d Cir.1998). Consequently, in determining the existence of subject matter jurisdiction, the court must resolve two questions: 1) whether plaintiff is challenging a state tax for purposes of the Tax Injunction Act and its attendant principles of comity; and 2) whether, if a tax is at issue, there are state remedies available.

### 1. The Township Ordinance

Trading Company is challenging Bristol Township's administration of its township ordinances pertaining to sewer rents and discharge regulations. The schedule of rates and charges in question states,

> All owners of nonresidential improved properties shall pay sewer rentals or charges based on actual water consumption. The rates for metered and nonmetered customers and hotels and motels shall be set from time to time by resolution or ordinance of the Township Counsel. [Amended 4-4-1992 by Ord. No. 92-8]

Code of the Township of Bristol, Pa., Art. II § 160-24(B)(2)(a) (1992). The Code provides for penalties for late or non-payment, *see id.* § 160-25(B)-(D), and per-mits delinquent charges to be filed as liens and "collected in the manner provided by law for the filing and collecting of municipal claims." *Id.* § 160-26(A). Trading Company argues that by failing to calculate its sewer charges based on actual usage and subsequently placing liens on its property, the Township and the other defendants acted in violation of section 1983.

### 2. Is the Sewer Assessment a Tax?

■ Under either comity principles or the Tax Injunction Act, the court must determine whether the assessments are taxes. Whether a particular assessment is a tax is a question of federal, not state law. *See Robinson Protective Alarm Co. v. Philadelphia*, 581 F.2d 371, 374-76 (3d Cir.1978); *see also National R.R. Passenger Corp. v. Pa. PUC*, 848 F.2d 436, 439 (3d Cir.1988) (noting same).[6] Moreover, in keeping with Supreme Court precedent, the Third Circuit has held that the term "tax" should be interpreted broadly for purposes of determining federal jurisdiction. *See Non-Resident Taxpayers Ass'n v. Philadelphia*, 478 F.2d 456, 458-59 (3d Cir.1973); *see also Behe v. Chester County Bd. of Assessment Appeals*, 952 F.2d 66, 68 (3d Cir.1991) ("the Supreme Court has expanded the scope of the Act to exclude virtually all challenges to state and local taxation from the federal courts").[7]

As the Fifth Circuit noted,

> case." *Id.* Similarly, *Adams* and related cases are inapplicable because the interpretation of a "tax" for purposes of bankruptcy priority does not consider the federalism questions at issue here. *See Bidart Bros. v. California Apple Comm'n*, 73 F.3d 925, 929-30 (9th Cir. 1996) (holding that bankruptcy interpretation of "tax" did not control interpretation of "tax" under Tax Injunction Act).

Similarly, the plaintiff argues that the present charges are not taxes because they are not mentioned in the Local Tax Enabling Act, 53 Pa.C.S. § 6901 *et seq.* Because the context is completely different, this argument is also unavailing.

**6.** The court acknowledges that one other court has held that sewer rentals and water charges are not taxes for purposes of determining priority in bankruptcy proceedings. *See In re Adams*, 40 B.R. 545 (E.D.Pa.1984). The plaintiff suggests that this court adopt that interpretation. However, the *Adams* court rested much of its opinion on the state construction of the charges in question, and such reliance is not proper in the present context. In *Robinson Protective*, 581 F.2d at 374-76, the Third Circuit explicitly rejected an approach that relied on the state construction of a municipal ordinance because the state court, in ruling that a particular ordinance was not a tax, "was not concerned with intrusive federal suits." *Id.* at 376. "Thus, the state court's label of the City ordinance as a rental, not a tax, need not control our construction of the Tax Injunction Act in this

**7.** The Tax Injunction Act and the principles of comity apply to municipal and local taxes as well as to state taxes. *See, e.g., Keleher v. New*

Distinguishing a tax from a fee often is a difficult task. Indeed, "the line between a 'tax' and a 'fee' can be a blurry one." Workable distinctions emerge from the relevant case law, however: the classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

*Home Builders Ass'n v. City of Madison,* 143 F.3d 1006, 1011 (5th Cir.1998) (citations omitted). The Third Circuit has suggested using these same factors, most notably in *Robinson Protective Alarm Company,* 581 F.2d at 371, in which it held that a Philadelphia ordinance requiring private alarm station companies to pay five percent of their gross earnings for privileges granted by the City was a tax. The court so ruled because the charge was a "revenue raising measure collected annually in a manner similar to other gross receipts levies." *Id.* at 376. The court noted that the "moneys collected are added to the public fisc, rather than applied exclusively to contractual services owed central alarm station companies." *Id.; see also Anders v. Borough of Norristown,* Civ. A. No. 97–2026, 1997 WL 660637, *3 (E.D.Pa. Oct.22, 1997) ("Assessments imposed primarily to raise revenue are 'taxes,' while assessments imposed for regulatory or punitive purposes are not 'taxes.' ").

Perhaps the clearest articulation of the principles involved is found in a recent Ninth Circuit case, *Bidart Brothers v. California Apple Commission,* 73 F.3d 925 (9th Cir.1996). In that case, the Ninth Circuit relied heavily on the First Circuit decision *San Juan Cellular Telephone Company,* 967 F.2d 683 (1st Cir.1992)[8] in isolating three factors to examine in determining whether an assessment is a tax: "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." *Bidart Bros.,* 73 F.3d at 931. While this formulation of the relevant considerations is not binding, the court believes that these factors effectively take into consideration the principles behind the Tax Injunction Act and comity.

■ First, the court should look to the body charging the assessment: "An assessment imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative agency." *Bidart Bros.,* 73 F.3d at 931. In this case, the entity that assesses this charge is the township of Bristol rather than an administrative agency. The assessments are charged pursuant to rates drawn up by the Township Council itself. *See* Code of the Township of Bristol, Pa., Art. II § 160–24(B)(2)(a) (1992) ("The rates for metered and nonmetered customers and hotels and motels shall be set from time to time by resolution or ordinance of the Township Council."). Consequently, this factor suggests that the assessment is a tax.

Second, the charges are assessed upon a broad group of individuals rather than on a

---

*Eng. Tel. & Tel. Co.,* 947 F.2d 547, 549 n. 1 (2d Cir.1991); *Kimmey v. H.A. Berkheimer,* 376 F.Supp. 49, 54 (E.D.Pa.1974); *VJG Realty Corp. v. City of New York,* Civ. A. No. 89–1648, 1990 WL 80036, *2 (SDNY June 7, 1990).

**8.** In that case, the First Circuit held that a three percent annual charge imposed on private cellular telephone companies by an ad-

ministrative agency qualified as a periodic fee rather than a tax. While the First Circuit actually interpreted 48 U.S.C. § 872, which bars federal jurisdiction over taxes imposed by Puerto Rico, the court applied the standards applicable to the Tax Injunction Act in making its decision.

narrow class, which is more likely to be a tax than a fee. *See Bidart Bros.*, 73 F.3d at 931. In its supplemental memorandum on this issue, Bristol Township draws the court's attention to section 160–11 of the Township Code, which requires, in most cases, that improved buildings be connected to the Township's sewer. *See* Code of the Township of Bristol, Pa., Art. II § 160–11 (1992). The Township further notes that more than 90% of the eligible properties in Bristol Township are connected to the sewer system; those that are not are connected to sewer systems maintained by other entities. *See* Bristol's Supp. Mem., Ex. E ¶ 5 (Aff. of Steve McClain).[9] This certainly qualifies as a broadly imposed charge in the context of the Township of Bristol, and thus the second factor also suggests that the assessment is a tax.

The third question, the ultimate use of the funds generated, is not so clear.[10] As the Ninth Circuit pointed out, an "assessment placed in a special fund and used only for special purposes is less likely to be a tax." *Id.* at 932. At first glance, this factor would seem to suggest that this charge is not a tax, because the revenues raised are used primarily to fund the sewer system itself according to the submissions of all parties. *See* Plf.'s Resp. to Mot. to Dismiss, Ex. 2–3 (noting that the charges were assessed to support the sewer system itself and to cover bond expenses). Also, the financial statements provided by the Township suggest that the revenues assessed may be segregated from the Township's general revenues, at least for accounting purposes. *See* Bristol's Supp. Mem., Ex. A. However, "even assessments that are segregated from general revenues are 'taxes' under [the Tax Injunction Act] if expended to provide 'a general benefit to the public.' " *Bidart,* 73 F.3d at 932, *quoting San Juan Cellular,* 967 F.2d at 685; *see also Wright v. McClain,* 835 F.2d 143, 145 (6th Cir.1987) (holding that fees imposed on parolees for supervision and victim compensation funds were taxes under the Tax Injunction Act because they went to promote the general welfare). In the present case, it is clear that the charges assessed ultimately are for the public benefit even if the funds are segregated: the sewer system is not the sort of narrowly focused benefit for which an assessment might more properly be termed a privilege or a fee. *See* Code of the Township of Bristol, Pa., Art. II § 160–22 (1992) (stating that sewer system was established for health and welfare of the citizens of the Township). Moreover, a relatively small amount of the revenue assessed is used for the administration of the sewer system—approximately 90% of the revenue is used for non-administrative purposes. *See* Bristol's Supp.Mem., Ex. A at 11.

In sum, then, looking to the factors that have been identified as most relevant by a variety of courts, the assessment in question should properly be considered a tax. To rule on the merits of this case, the court would have to make, albeit indirectly, a ruling as to the legitimacy of the revenue collection practices of a state entity that is directly assessing charges on a broad class for purposes related to the welfare of that group.

This conclusion is buttressed by the holdings of cases addressing similar issues. The Third Circuit has acknowledged that

---

9. At a hearing on the motion, the plaintiff challenged this conclusion, noting that only about 25% of properties in the area were actually connected to Bristol's sewer system. However, this argument does not address the fact that a very high percentage of *eligible* properties were connected to Bristol's system.

10. The First and Ninth Circuits suggest looking to this issue only if the first two are not dispositive. *See Bidart Bros.,* 73 F.3d at 930. However, both the Third Circuit and the Fifth Circuit have focused on this issue as being quite important. *See Robinson Protective,* 581 F.2d at 376; *United Wire, Health and Welfare Fund v. Morristown,* 793 F.Supp. 524, 530 (D.N.J.1992) (noting Third Circuit's emphasis on the destination of the funds); *Home Builders Assoc.,* 143 F.3d at 1011.

special assessments exacted by local municipalities to finance projects like sewers may be considered taxes, depending on the context. *See National R.R. Passenger Corp. v. Pa. PUC*, 848 F.2d at 438. In this circuit, the district of Delaware addressed a section 1983 challenge made by a group of landowners who had been forced to abandon their own septic systems, connect to a new city system, and pay charges—including an annual service charge—for the same. *See Kerns v. Dukes*, 944 F.Supp. 1214, 1216 (D.Del.1996). With little analysis, the district court stated that, under either comity principles or the Tax Injunction Act, the charges in question were taxes. *See id.* at 1218–20. The Third Circuit affirmed that decision and rejected the argument that "this direct and substantial challenge to a system of assessments—i.e., taxes" would be permitted under the Tax Injunction Act and comity principles. *Kerns v. Dukes*, 153 F.3d 96, 102 (3d Cir.1998).[11] Given that *Kerns* is the law in this Circuit, it is difficult to see how a sewer charge is other than a tax for purposes of this case.[12]

■ Both *Kerns* and the cases from other jurisdictions suggest that even a charge in the form of a fee for a particular service may be a tax. This point is made clearly in a similar case in which plaintiffs brought challenges against the City of New York and various City officials who had assessed, *inter alia*, water and sewer charges and imposed liens on property for which charges were not paid. The plaintiffs alleged that some of the charges and liens were imposed in violation of the relevant city ordinances. *See VJG Realty Corp.*, 1990 WL 80036, at *1. When faced with a jurisdictional challenge under the Tax Injunction Act, the plaintiffs argued that the Act did not apply because they were "challenging the imposition of Health Department and water and sewer charges, not taxes." *Id.* at *2. The court rejected this argument, stating that the municipal charges at issue were intended to raise revenue for specific government actions: "The money goes into the City treasury after payment, similar to a regularly assessed tax. The fact that these charges are delineated as fees for services performed by the City, and thus are subject-specific, does not make them different from a tax." *Id.* at 3; *see also Tramel v. Schrader*, 505 F.2d 1310, 1314–16 (5th Cir. 1975) (holding that sweeping goals of the Tax Injunction Act required treating special assessments used to pay for costs of

---

11. Plaintiff argues that *Kerns* has little relevance to the present case, noting that the district court opinion in *Kerns* did not analyze in detail why the assessment was a tax. However, the fact that all parties agreed that the sewer charges in *Kerns* were taxes, *see Kerns*, 944 F.Supp. at 1219, does not strengthen plaintiff's case because parties cannot confer jurisdiction where none otherwise exists. In addition, even if the district court did not discuss in detail why the assessments were a tax, the Third Circuit opinion extensively analyzed why a challenge to the form of the collection of the assessments implicated the Tax Injunction Act and comity. *See Kerns*, 153 F.3d at 101–03.

12. Other jurisdictions have made similar rulings. In *Group Assisting Sewer Proposal-Ansonia v. City of Ansonia*, 448 F.Supp. 45 (D.Conn.1978), the plaintiffs raised constitutional challenges to a municipality's $2,000.00 sewer assessment plus an additional sum per unit frontage, *see id.* at 45–46, and the court held it to be a tax. *See id.* at 46; *see also Burris v. City of Little Rock*, 941 F.2d 717, 720 (8th Cir.1991) (holding that special assessments and charges for sewer system were taxes); *MMM Realty v. City of New York*, Civ. A. No. 96–2466, 1996 WL 285418 (E.D.N.Y. May 17, 1996) (denying request for injunction in case in which liens were placed on property for unpaid sewer charges because Tax Injunction Act did not permit court to issue such an order). Trading Company correctly points out that *Ansonia* relied heavily on Connecticut law and addressed a sewer hook-up fee. *See Ansonia*, 448 F.Supp. at 46. However, the fact that the charge dealt with a different aspect of a sewer is not dispositive, and the court also notes that the *Ansonia* decision did not rely exclusively on Connecticut law: the court made independent findings that city assessments would qualify as a tax by looking to other decisions and emphasizing the concerns underlying the Tax Injunction Act. *See id.*

improvements as tax); *Alnoa G. Corp. v. City of Houston*, 563 F.2d 769 (5th Cir. 1977) (holding that special street assessment used to pay for paving qualified as a tax).[13]

■ Although plaintiff argues strenuously that it is not attacking the constitutionality of the assessments but rather the "arbitrary" process through which legal assessments were made, the Third Circuit rejected just such a claim when affirming the dismissal of *Kerns v. Duke*, 153 F.3d 96, 102–03 (3d Cir.1998). The plaintiffs challenged the dismissal of their claim by arguing that "the primary purpose of their suit is to 'address the arbitrary and capricious establishment of a sewer system' and not to challenge the sewer assessments." *Id.* at 102. Relying on *McNary*, the Third Circuit emphasized that such actions implicate the issues that justify federal deference to state courts in state tax cases: a challenge to the procedures or the method by which a tax is carried out may do no less damage to the state tax system than would a straightforward challenge to the legitimacy of an assessment. *See id.* The Third Circuit described the difficulties such a suit could present, and "given this direct and substantial challenge to a system of assessments—i.e., taxes—that is now in place, we find unpersuasive the argument that the Property Owners' primary target is the 'arbitrary and capricious establishment of a sewer system' and that this somehow insulates the Property Owners' suit from the Tax Injunction Act and the demands of comity." *Id.* at 102–03, 102 S.Ct. 177; *see also Kimmey v. H.A. Berkheimer, Inc.*, 376 F.Supp. 49 (E.D.Pa.1974) (rejecting challenge to procedures because "to grant plaintiffs the relief they request, the Court perforce would be required to enjoin the *collection* of taxes").

Similarly, in *Raskauskas v. Town of Bethany Beach*, 555 F.Supp. 783 (D.Del. 1983), a plaintiff brought a section 1983 action alleging due process violations with respect to a local ordinance that prevented him from acquiring relevant permits if he did not pay certain real estate taxes. *See id.* at 786. By the time plaintiff brought his federal case, the ordinance in question had been repealed, the permit he requested had been granted, and the "unique method of collection" abolished. *Id.* at 787–88. The plaintiff accordingly argued that any relief afforded arising out of the procedures imposed by the past tax would not intrude on present tax enforcement. *See id.* at 788. The court rejected this argument:

Although the Court recognizes that Raskauskas is not seeking a tax refund and that Ordinance 86 is no longer in effect, nevertheless, it finds that the rationale and holding in [*McNary* ] are applicable to the facts of this case. Raskauskas cannot recover damages in this suit under Section 1983 or the pendent state claims unless the Court first determines that defendants' administration of the Town's tax system and collection procedures abridged Raskauskas' constitutional rights. This determination would require the Court to examine the Town's past customs and procedures for collecting taxes as well as the procedures followed when adopting Ordinance 86 and to declare such procedures constitutionally invalid.... The Supreme Court, however, in [*McNary* ] and *Grace* has expressly held that federal courts under the principles of comity are precluded from making such intrusive inquiries. The facts that Ordinance 86 is no longer in effect and that Raskauskas is not seeking a refund do not decrease the impact that a trial for damages in federal court would have upon municipal offi-

---

**13.** It is also irrelevant that the taxes in question were enforced through liens. *See, e.g., Dawson v. Childs*, 665 F.2d 705, 710 (5th Cir.1982) (stating that dissolving lien would violate Tax Injunction Act); *Timber Ridge As-*

*soc. v. City of Hartford*, 578 F.Supp. 221 (E.D.Wis.1984) (holding that fact that charges were enforced by lien did not remove them from category of taxes).

cials. To bring and maintain such damage suits would undoubtedly have a chilling effect upon future tax policies and procedures of the town officials.

*Id.* at 788. This is an accurate description of the implications of a similar holding in this case.

Upon consideration of the case law that is most analogous to the assessment at hand and the factors articulated as relevant by other courts, the court finds that these assessments are in fact taxes within the meaning of the Tax Injunction Act and the principles of comity. While plaintiff is correct in saying that the court would not be forced to rule directly on the legitimacy of the sewer charge, were the court to permit an injunction, declaratory relief, or damages, the Township will have been told that a particular method of assessing charges was unconstitutional. This clearly would have a significant effect on state collection actions, and a federal court is accordingly deprived of jurisdiction unless there is no state process by which the plaintiff can seek relief for the actions of the Township and its officials.

### 3. Is There a Remedy?

 Under both the Tax Injunction Act and principles of comity, the court must analyze the availability of remedies in the Pennsylvania state courts. The Act does not apply unless the state court system provides a "plain, speedy and efficient remedy." 28 U.S.C. § 1341. Similarly, in *McNary,* the Supreme Court held that principles of comity will not bar federal jurisdiction unless the relief is "plain, adequate, and complete." *McNary,* 454 U.S. at 116 n. 8, 102 S.Ct. 177. The Court equated that phrase with the limitation in the Tax Injunction Act itself. "Both phrases refer to the obvious precept that plaintiffs seeking protection of federal rights in federal courts should be remitted to their state remedies if their federal

rights will not thereby be lost." *Id.* In contrast to the broad reading given to "tax," the Supreme Court has instructed that district courts should "construe narrowly" any exceptions based on the unavailability of state remedies. *See Behe,* 952 F.2d at 68; *Hardwick v. Cuomo,* 891 F.2d 1097, 1105 (3d Cir.1989); *Amerada Hess Corp.,* 689 F.2d at 404.

"For a state remedy to be adequate, it must satisfy certain *procedural* criteria." *Hardwick,* 891 F.2d at 1105, *citing Rosewell,* 450 U.S. at 522, 101 S.Ct. 1221. "Thus, a state remedy will be sufficient if it provides the taxpayer with a full hearing and judicial determination at which [the taxpayer] may raise any and all constitutional objections." *Hardwick,* 891 F.2d at 1105, *quoting Grace Brethren Church,* 457 U.S. at 412, 102 S.Ct. 2498. The Supreme Court clearly indicated in *Rosewell* that these requirements set very low thresholds and that substantive concerns cannot enter into the court's consideration of state remedies. *See Rosewell,* 450 U.S. at 515, 101 S.Ct. 1221. "[T]he State remedy need not be the best or most convenient one," *Behe,* 952 F.2d at 68, and the court accordingly may not evaluate the inconvenience to the plaintiff of relitigating a claim that was literally days from trial when this motion was made.

Plaintiff does not suggest that Pennsylvania lacks a remedy for inappropriately assessed taxes and, indeed, could not do so. Trading Company successfully utilized local procedures to force the defendants to file Writs of Scire Facias, and those local suits terminated in favor of the present plaintiff in that both liens on the properties were ordered removed. Thus, the court does not need to inquire further as to the plaintiff's ability to challenge the particular bill it was forced to pay, and there is no need for refund because the plaintiff never actually paid the taxes assessed.[14]

---

**14.** In using these remedies, plaintiff appears to have availed itself of the provisions of 53 Pa.C.S.A. § 7101 *et seq.,* which provide prop-

erty owners a remedy to contest the validity of various municipal taxes and municipal liens. *See also* 53 Pa.C.S.A. § 7182 (discharging lien

There is also a remedy for the constitutional harms allegedly suffered by the plaintiff. As the Third Circuit explained in detail in *Behe*, Pennsylvania provides a remedy for individuals who bring section 1983 actions challenging tax assessments. Like the plaintiff here, the *Behe* plaintiffs alleged violations of substantive due process. *See Behe*, 952 F.2d at 67. The Third Circuit, citing to earlier case law in both the Third Circuit and Pennsylvania, emphasized that taxpayers may bring suits in Pennsylvania state courts alleging violations of both the Pennsylvania Constitution and the United States Constitution. *See id.* at 69 (citing cases so holding); *see also Balazik v. County of Dauphin*, 44 F.3d 209, 218 (3d Cir.1995) (stating, in context of property assessment challenge raising equal protection claims, that "Pennsylvania provides a 'plain, adequate and complete' remedy for § 1983 plaintiffs challenging state taxation policies"). Consequently, the court cannot say that the plaintiff is foreclosed from seeking the additional relief it wants in the state court system.

#### 4. Conclusion

Because the sewer assessment is a tax and because there are adequate state remedies, the defendants' motion must be granted. Under both principles of comity and the Tax Injunction Act, the relief sought by plaintiff does not fall within the jurisdiction of a federal court because it seeks to challenge, albeit indirectly, a state tax when there is an adequate state remedy available. The requests for injunctive relief and declaratory relief are directly foreclosed by the Tax Injunction Act; the request for damages is denied by the attendant principles of comity.

This dismissal will be as to all defendants. Bristol Township and Bristol Township Authority filed the motion, and defendants Raddi and Snyder joined. As Mr. Raddi points out, it is equally proper to dismiss individuals and state bodies for want of jurisdiction under the Tax Injunction Act and comity. *See, e.g., VJG Realty*, 1990 WL 80036, at *5 (noting inconsistency of permitting suit against individuals when jurisdiction is lacking as to municipalities).

### III. The Johnson Act

Bristol Township, Bristol Township Authority, and Mr. Raddi recently filed a supplemental memorandum of law addressing questions pertaining to the sewer department's funding. In this memorandum, the defendants raise for the first time the possibility that this court might also be deprived of jurisdiction by the Johnson Act, 28 U.S.C. § 1342, which limits its federal jurisdiction over claims pertaining to rate-setting activities by state utilities.[15]

Initially, the Township of Bristol qualifies as a state rate-making body because it is responsible for drafting the ordinances pertaining to the sewers, including the rates that will be charged. *See J & A Realty v. City of Asbury Park*, 763 F.Supp. 85 (D.N.J.1991) (applying Johnson Act to bar jurisdiction over challenge by plaintiff to municipality's imposition of sewer charges).

The court must next look to the requirements of the statute itself. If all four requirements are met, a federal court has no jurisdiction to issue injunctive relief

---

upon payment of security until matter is resolved).

**15.** According to the Johnson Act,

The district courts may not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where;

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342.

against a municipal rate-making body. *See, e.g., Freehold Cogeneration v. Board of Regulatory Comm'rs,* 44 F.3d 1178, 1186 (3d Cir.1995); *Zucker v. Bell,* 373 F.Supp. 748, 755 (E.D.Pa.1974). In addition, although the Third Circuit has not yet addressed the issue, every other circuit that has decided the issue has held that declaratory relief and damages are equally unavailable if the Johnson Act applies. *See Brooks v. Sulphur Springs Valley Elec. Co-op.,* 951 F.2d 1050, 1053–54 (9th Cir. 1991); *Miller v. NYS Pub. Serv. Comm'n,* 807 F.2d 28, 31–33 (2d Cir.1986).

In this case, the four prongs of the Johnson Act are met. First, jurisdiction is premised on violations of federal constitutional rights.[16] Although plaintiff argues again that it is not attacking an order setting rates but rather the illegitimate application of that order, for the court to rule on the application question would necessarily affect the rate-making orders of the Township.[17] Second, no party contends that the sewer rents of Bristol Township have any effect on interstate commerce, and the court finds that they do not. Third, as the materials from the defendants indicate, the sewer ordinances were passed by the Township only after public meetings. *See* Defs.' Supp.Mem., Ex C (providing minutes of meetings). Finally, as described previously, the plaintiff has availed itself of the state court system for one aspect of its claim, and the Pennsylvania state courts have concurrent jurisdiction to hear the constitutional aspects of the section 1983 claims. Consequently, the court has no jurisdiction to issue injunctive relief, declaratory relief, or damages under the Johnson Act.

**16.** The fact that plaintiff has brought suit under section 1983 does not insulate it from the Johnson Act. *See J & A Realty v. City of Asbury Park,* 763 F.Supp. 85, 88 (D.N.J.1991) ("A plaintiff may not use § 1983 as an 'end run around the Johnson Act.' ").

**17.** Plaintiff cites *Shrader v. Horton,* 471 F.Supp. 1236 (W.D.Va.1979) in support of its

## IV. State Law Claims

The plaintiff also brings a count alleging wrongful use of civil process under Pennsylvania's Dragonetti Act, 42 Pa.C.S.A. §§ 8351–8355. However, the court has only supplemental jurisdiction over this claim. As the defendants' motion to dismiss the section 1983 claim will be granted, the court declines to exercise that supplemental jurisdiction and will dismiss the state court claim without prejudice.

## V. Conclusion

Like Justice Blackmun in *Rosewell,* the court is

> aware of just how frustrating it can be for a conscientious ... taxpayer who encounters what appears to him to be unfairness, arbitrariness, delay, and an inadequacy of redress even though he might ultimately prevail.... But the Tax Injunction Act was passed for a specific purpose, and I doubt very much that the cure, although it may provide a headache, is worse than the disease.

*Rosewell,* 450 U.S. at 528–29 (Blackmun, J., concurring). The plaintiff has already had the offending liens removed from its property and there is no indication that the charges have continued to be assessed.

An appropriate Order follows.

### ORDER

**AND NOW,** this 27th day of April, 1999, upon consideration of the Defendants' Motion to Dismiss, the response thereto, and the submissions of the parties, it is hereby **ORDERED** that the Motion is **GRANT-**

argument. However, *Shrader* dealt with a situation in which the challenge to rates was much more attenuated than in the present case. As noted several times, if the court were to rule that plaintiff could continue the present action, it would indirectly be ruling that charges issued by the Township were illegitimate.

**ED.** This action is **DISMISSED** without prejudice.